unlimited discovery of everything known by the prosecutor, if the subject matter of such a request is material, or indeed if a substantial basis for claiming materiality exists, it is reasonable to require the prosecutor to respond either by furnishing the information or by submitting the problem to the trial judge.  See **Thomas v. Texas,** 841 S.W. 2d 399 (Tx.Cr.App. 1992)(en banc).  Making matters worse for the State, they affirmatively stated that the witness had no criminal history.  In Saldivar, the trial court ordered the State to reveal this information pertaining to all of its witnesses. When the prosecutor receives a specific and relevant request, the failure to make any response is seldom, if ever, excusable.  **Agurs,** 427 U.S. at 106, 96 S.Ct. at 2399.

If the withheld evidence created a reasonable doubt as to the defendant's guilt or punishment, the conviction has to be reversed. However, "if there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." **Id.**  Furthermore, in determining whether the omitted evidence raised a reasonable doubt, "the omission must be evaluated in the context of the entire record." **Id.**

In **United States v. Bagley**, 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed. 2nd 481 (1985), the Supreme Court expanded the definition of favorable evidence to include both exculpatory evidence and impeachment evidence, because "[s]uch evidence is 'favorable to the accused' so that, if disclosed and used effectively, it may make the difference between conviction and acquittal." **Bagley**, 473 U.S. at 676, 105 S.Ct. at 3380.(citation omitted)(emphasis added)

the trial court appropriately gave the requested jury instructions, would have tended to take away credibility from her testimony, and definitively changed the result of the outcome. Impeachment evidence is that which is offered "...to dispute, disparage, deny, or contradict..." See **Thomas v. Texas**, 841 S.W. 2nd at 405 citing Black's Law Dictionary, pg. 678 (5th ed. 1990). Therefore, this withheld requested information was favorable and the second part of the test is satisfied.

The third part of the test requires a reviewing court to determine whether the deprived information was material. That is, would it have created a probability sufficient to undermine the confidence in the outcome of the proceeding? To make this determination, as was just discussed, the error must be examined within the context of the entire record. **Bagley**, 473 U.S. at 683, 105 S.Ct. at 3384. See also, **Agurs**, 427 U.S. at 113, 405 96 S.Ct. at 2402. Furthermore, the error must be viewed in the context of the overall strength of the State's case. **Id.** In this context, the **Agurs** Court stated:

"If...one of only two eyewitnesses to a crime had

told the prosecutor that the defendant was definitely

not is perpetrator and if this statement was not

disclosed to the defense, no court would hesitate to

to reverse a conviction resting on the testimony of

the other eyewitness. But if there were fifty

eyewitnesses, forty nine of whom identified the

defendant, and the prosecutor neglected to reveal

that the other, who was without his badly needed

glasses on the misty evening of the crime, had said

that the criminal looked something like the defendant
but couldn't be sure as he had only had a brief glimpse,
the result might well be different." **Id.**, 427 U.S. at
113, 96 S.Ct. at 2402, n. 21 (quoting **Comment, Brady v.**
**Maryland and The Prosecutor's Duty to Disclose**, 40
U.Chi.L.Rev., 112, 125 (1972).

Consequently, a verdict which is only weakly supported by
the record is more likely to be affected by the prosecutorial error
than a verdict which is strongly supported. **Strickland**, 466 U.S. at
696, 104 S.Ct. at 2069. As was previously discussed, this third part
of the analysis is clearly satisfied. Finally, "the reviewing court
may consider directly any adverse effect that the prosecutor's
[nondisclosure] might have had on the preparation or presentation of
the defendant's case. The reviewing court should assess the possibility
that such effect might have occurred in light of the totality of the
circumstances and with an awareness of the difficulty of reconstructing
in a post trial proceeding the course that the defense and the trial
would have taken had the defense not been misled by the prosecutor's
[failure to disclose]." **Bagley**, 473 U.S. at 683, 105 S.Ct. at 3384.

With the foregoing in mind, it must be noted that the State
relied heavily upon the testimony of Norma Martinez to implicate
Applicant in the murder by showing she intentionally fired the gun.
It thus follows that the evidence tending to impeach this testimony
would have undermined the State's case. See **Bowen v. Maynard**, 799 F.2nd
593, 610 (10th Cir. 1986); **United States ex. rel. Smith v. Fairman**,
769 F. 2nd 386 (7th Cir. 1985); and **Lindsey v. King**, 769 F.2nd 1034

(5th Cir. 1985).  **Brady** does not require the exculpatory evidence be certain to exonerate, only that it may do so if used effectively.  See **Bagley**, 473 U.S. at 676, 105 S.Ct. at 3380; see also **Brady**, 373 U.S., at 82 83, 83 S.Ct., at 1197.  Impeachment testimony is sufficient to undermine confidence in a verdict. See also **Williams v. Whitley**, 940 F.2nd 132 (5th Cir. 1991).  The Texas Court of Criminal Appeals directs that the Sixth Amendment must be liberally construed in order that an accused receive all the protections intended by the Constitution.  See **Sambrano v. Texas**, 754 S.W.2d 768 (Tex.App.-San Antonio, 1988).  The Court of Criminal Appeals, in evaluating Sixth Amendment Claims, has frequently stated that great latitude should be allowed the accused in showing any fact which would tend to establish...motive...upon the part of any witness testifying against him.  See **Seal v. Texas**, 496 S.W. 2nd 621 (Tx.Cr.App. 1973)(non-relevant portions omitted); **Hooper v. State**, 494 S.W. 2nd 846 (Tx.Cr.App. 1973); **Burkhalter v. Texas**, 493 S.W. 2nd 214 (Tx.Cr.App. 1973); **Wood v. Texas**, 486 S.W. 2nd 359 (Tx.Cr.App. 1972); **Jackson v. Texas**, 482 S.W. 2nd 864 (Tx.Cr.App. 1972); **Fletcher v. State**, 437 S.W. 2nd 849 (Tx.Cr.App. 1968); **Blake v. State**, 365 S.W. 2nd 795 (Tx.Cr.App. 1963).  See also **Mutscher v. State**, 514 S.W. 2nd 905 (Tx.Cr.App. 1974); **Evans v. Texas**, 519 S.W. 2nd 868, 871 (Tx.Cr.App. 1975).

The motives which operate on the mind of a witness while he or she testifies should never be regarded as immaterial or irrelevant. See **McDonald v. Texas**, 77 Tex.Cr.Rep. 612, 179 S.W. 880 (1915).  To make cross examination effective, defense counsel should be equipped to expose to the jury the facts from which jurors, as the sole triers

of fact and credibility, could appropriately draw inferences relating
to the reliability of the witness.  See **Davis v. Alaska**, 415 U.S. 308,
94 S.Ct. 1105, 39 L.Ed 2nd 347 (1974).  Denial of the right of effective
cross-examination is "constitutional error of the first magnitude and
no amount of showing of want of prejudice would cure it."  **Id.**,
**Brookhart v. Janis**, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed. 2nd 314 (1966);
**Evans v. Texas**, 519 S.W. 2nd 868, 873 (Tx.Cr.App. 1975).

In **Kyles v. Whitley**, the Supreme Court held the government
has the duty to disclose exculpatory evidence, even in the absence of
a request by the defendant, if the withheld evidence, considered as
a whole, results in a "reasonable probability" that a different result
would have occurred.  The defendant is only required to show that the
government's failure to disclose the exculpatory evidence "undermined
confidence in the outcome of the trial."  **Kyles v. Whitley**, 514 U.S.
419, 115 S.Ct. 1555, 1568 69, 131 L.Ed.2nd 490 (1995).  Whether the
prosecutor or the police acted in good or bad faith in failing to
diclose exculpatory evidence is immaterial.  **Kyles**, 514 U.S. at 419.

In **Kyles**, the Supreme Court, in effect, held the prosecutor
is responsible for material exculpatory information in the possession
of the police, and reversal of a criminal conviction for failure to
disclose material exculpatory information to the defendant by the
police is mandated by **Brady**, even if the prosecution was not aware
of the existence of such information.

Due process obliges the State to disclose exculpatory evidence
to one accused of a crime.  This obligation originated in early 20th
century strictures against misrepresentation by members of the bar

and is most prominently associated with the United States Supreme Court's decision in **Brady**, **Mooney**, and **Pyle**. The rationales underlying this legal obligation are basic to our notions of justice: Such disclosure will serve to justify trust in the prosecutor as "the representative...of a sovereignty...whose interest...in a criminal prosecution is not that it shall win a case, but that justice shall be done." **Berger v. United States**, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935)(non-relevant portions omitted). Additionally, it will tend to preserve the criminal trial, as distinct from the prosecutor's private deliberations, as the chosen forum for ascertaining the truth about criminal accusations. See **Rose v. Clark**, 478 U.S. 570, 577 78, 106 S.Ct. 3101, 3105 3106, 92 L.Ed.2nd 460 (1986); **Estes v. Texas,** 381 U.S. 532, 540, 85 S.Ct. 1628, 1631, 14 L.Ed.2nd 543 (1965); **United States v. Leon**, 468 U.S. 897, 900 901, 104 S.Ct. 3405, 3409, 82 L.Ed.2nd 677 (1984)(recognizing general goal of establishing "procedures under which criminal defendants are 'acquitted or convicted on the basis of all the evidence which exposes the truth'")(quoting **Alderman v. United States**, 394 U.S. 165, 175, 89 S.Ct. 961, 967, 22 L.Ed. 2nd 176 (1969)). In short, under the rule of law, it is preferable that the State err on the side of caution than win its case through abuse of its power. This principle is derived from the notion that the prosecutor represents a government whose power to govern is defined by its constitutional obligation to govern with fairness. This is one of the few protections which citizens have against prosecutorial abuse of the State's resources.

To this end, in **Agurs**, it became clear that even a defendant's

42

failure to request favorable evidence did not leave the State free of
all obligation to disclose exculpatory evidence.  In **Bagley**, supra,
the Supreme Court disavowed any distinction between exculpatory and
impeachment evidence for **Brady** purposes, and held that regardless of
request, favorable evidence is material, and constitutional error
results from its suppression by the government "if there is a reasonable
probability that, had the evidence been disclosed to the defense, the
result of the proceeding would have been different." **Id.**, 473 U.S.
at 682, 105 S.Ct. at 3383, 3385; See **Thomas**, supra; see also **Kyles**,
supra.  In all these cases the Supreme Court reaffirmed the law's
demand for fairness to a criminal defendant.

<u>DENIAL OF MOTION FOR NEW TRIAL</u>

<u>ARGUMENTS AND AUTHORITIES</u>

At a hearing on a motion for new trial, the trial court is
the trier of fact, and its findings should not be disturbed unless
movant shows an abuse of discretion.  See **Tollett v. Texas**, 799 S.W.
2nd 256, 259 (Tx.Cr.App. 1990).  In considering a motion for new trial,
the trial court possesses broad discretion in assessing the credibility
of witnesses and in weighing the evidence to determine whether a different
result would occur upon retrial.  **Messer v. State**, 757 S.W. 2nd 820,
827 (Tex.App.-Houston [1st Dist.] 1988, pet. ref'd); **Morris v. State**,
696 S.W. 2nd 616, 620 (Tex.App.-Houston [14th Dist.] 1985), aff'd, 739
S.W. 2nd 63 (Tx.Cr.App. 1987).

The granting or denial of a motion for new trial is discretionary
with the trial court.  See **Lewis v. State**, 911 S.W. 2nd 1, 7 (Tx.Cr.App.
1995).  Such a ruling will only be overturned upon a showing of abuse

of discretion.  See **Gonzales v. Texas**, 855 S.W. 2nd 692, 696 (Tx.Cr. App. 1993); **Jones v. Texas**, 711 S.W. 2nd 35, 36 (Tx.Cr.App. 1986); **Eddlemon v. State**, 591 S.W. 2nd 847, 850 (Tx.Cr.App. [Panel Op.] 1979).  In **Drew v. State**, 743 S.W. 2nd 207, 225 (Tx.Cr.App. 1987), the Court of Criminal Appeals held that the requirements for obtaining a new trial upon newly discovered evidence are four:

1.  the newly discovered evidence was unknown to the movant at the time of his trial;

2.  the movant's failure to discover the evidence was not due to his want of diligence;

3.  the materiality of the evidence is such as would probably bring about a different result in another trial;

4.  the evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching.  See **Id.** at 226.

In **Jock v. State**, 708 S.W. 2nd 545 (Tex.App.--Texarkana, 1986), the Texarkana Court of Appeals held that the newly discovered evidence was sufficient to warrant a new trial.  Somehow the Fourteenth Court in Saldivar determined, without any analysis pursuant to discussed case law, that the newly discovered evidence was immaterial.  **Saldivar**, 908 S.W. 2nd at 488.  The State urged in **Jock** that the determination of the materiality of the new evidence is within the discretion of the trial court because it is in a better position to determine the credibility of the new evidence.  It must be remembered that there was no issue of credibility of the newly discovered evidence as Martinez's criminal record was a matter of public record.  **Simon v. State**, 630 S.W. 2nd 681 (Tex.App.--Houston [1st Dist.] 1981, no pet.).  However, an analysis

of the Texas cases demonstrate that in order to sustain the trial
judge's findings, there must exist a basis for materiality which is
established in the record. **Jock**, S.W. 2nd 708 at 547. See **Coleman
v. State**, 966 S.W. 2nd 525 (Tx.Cr.App. 1998). **Jock** goes through a
litany of cases which enunciate factors establishing the legitimacy
of the trial court's rejection of newly discovered evidence as
justifying a denial of a motion for new trial. **Jock**, 708 S.W. 2nd at
548. Additionall, **Jock** goes through cases as precedent for the granting
of a motion for new trial on the basis of newly discovered evidence.
**Simon**, 630 S.W. 2nd at 682; **Washington v. State**, 542 S.W. 2nd 194
(Tex.App.--Houston [14th Dist.] 1982, pet. ref'd); **Carlisle v. State**,
549 S.W. 2nd 698 (Tx.Cr.App. 1977); **Henson v. State**, 150 Tex.Crim. 344,
200 S.W. 2nd 1007 (1947). **Jock** speaks to two issues which they
determined could have produced two elements of doubt in the minds of
the jurors: an eyewitness account at the scene and the statements of
admission made by the person not charged with the crime. **Jock**, 708
S.W. 2nd at 549. (emphasis added). The **Jock** court in quoting **Henson
stated:**

> Each case must be determined in the light of the
> peculiar facts and circumstances there presented.
> One controlling factor must be recognized here, as
> in all criminal cases, which is: the doctrine of
> reasonable doubt. If doubt exists between issues,
> that which is favorable to the accused should be
> adopted. Such is a basic principle of our
> jurisprudence. **Jock**, 708 S.W. 2nd at 549-550.

The probable truth of the newly discovered evidence is primarily a determination for the trial judge. **Williams v. State**, 504 S.W. 2nd 477, 483 (Tx.Cr.App. 1974); **Boyett v. State**, 692 S.W. 2nd 512, 517 (Tx.Cr.App. 1985). In **Eddlemon**, the Court faced a situation "where the truth of the new evidence is properly contested ...this Court should not second-guess...the fact finder is in the best position to decide the issue." **Eddlemon**, 591 S.W. 2nd at 850 (non-relevant portions omitted). This cannot be a factor of any import in Saldivar as there is no question whatsoever as to the truth of the matter of the newly discovered evidence as it was a matter of public record. In essence, the court of appeals and the trial court in Saldivar, by denying the motion for new trial and denying the jury their right to hear the evidence as to the credibility of one of the State's main witnesses, Norma Martinez, they in effect egregiously violated Applicant's Sixth Amendment right as it is incorporated in the Due Process Clause of the Fourteenth Amendment. "The right to offer the testimony of witnesses,...is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. An accused always has the right to confront the prosecution's witnesses for the purpose of challenging their testimony. This right is a fundamental element of due process of law.: **Whitmore v. State**, 570 S.W. 2nd 889, 897 (Tx.Cr.App. 1978).

The central concern of the Confrontation Clause of the Sixth Amendment is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the

context of an adversary proceeding before the trier of the fact.

**Id.**  See **Bruton v. United States**, 391 U.S. 123, at 135-136, 88 S.Ct.
1620, 20 L.Ed. 476 (1968).  Applicant thus asserts that the motion for
new trial should have been granted.  A new jury should have the
opportunity to be in possession of all material and favorable information
so that justice may be done.

Ground of Review No. 3

        The court of appeals unreasonably applied the law interpreting
the Fifth and Sixth Amendments of the United States Constitution, in
holding that the trial court did not err in failing to suppress the
Applicant's written confession obtained after invocation of rights.
The appellate court erroneously reasoned that the Applicant's request
to speak with an attorney was not unambiguous, and that she was not
in custody at the time she made the request.

Facts Pertaining to Ground of Review No. 3

        Applicant filed her pretrial Motion to Suppress Confession
asserting that her written statement was not obtained in compliance
with Article 38.22 of the Texas Code of Criminal Procedure and the
Fifth and Sixth Amendments of the United States Constitution.  (Rec.
Ex.#14).  Subsequent to the pretrial hearing the Applicant continued
to object to the admission of her written statement.  (Rec.Ex.#15).
Officers Larry Young and Isaac Valencia testified that throughout the
nine hour standoff immediately preceding the giving of Applicant's
written statement, they worked to gain her trust.  (Appellant brief,
p.27).  Tape recordings of the standoff reveal that the officers
repeatedly told her they wanted to help her, (SX 33, p. 58, 72, 143,

152, 157), that it was in her best interest to publicly tell her story, (SX 33, pg. 239, 261), and that the Lord himself wanted her to publicly tell her story.  (SX 33a, pp. 202-203; Appellant's brief, p.27).  Over objection, the written statement was admitted to the jury.  (Rec.Ex.16).

## ARGUMENTS AND AUTHORITIES

It is axiomatic that prior to a custodial interrogation one must be advised, among other things, that he has a right to remain silent, **Miranda v. Arizona**, 384 U.S. 436, 467-68, 86 S.Ct. 1602, 16 L.Ed. 2d 694, 720 (1966), and to consult with an attorney.  **Id.**, at 471, 86 S.Ct. at 1602, 16 L.Ed.2d at 722.  Similarly well settled is that "if the individual indicates in any matter, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." **Miranda**, 584 U.S. at 473-74, 86 S.Ct. 1602, 16 L.Ed.2d at 723.  It has long been acknowledged that the invocation of that right by the suspect must be "scrupulously honored." **Michigan v. Mosley**, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed. 2d 313 (1975).

The right to counsel recognized in **Miranda** is sufficiently important to suspects in criminal investigations, that it "require[es] the special protection of the knowing and intelligent waiver standard." **Edwards v. Arizona**, 451 U.S. 1039, 1046-47, 77 L.Ed.2d 405, 103 S.Ct. 2830 (1983)(plurality op.), **Id.** at 1051 (Powell, J. concurring in judgment).  If the suspect effectively waives her right to counsel after receiving the **Miranda** warnings, law enforcement officers are free to question her.  **North Carolina v. Butler**, 441 U.S. 369, 372-76, 60 L.Ed.2d 286, 99 S.Ct. 1755 (1979).

However, if a suspect requests counsel at any time during

the interview, he is not subject to further questioning until a lawyer has been made available or the suspect herself reiterates conversation. **Edwards v. Arizona**, 451 U.S. at 484-85. This "second layer of prophylaxis for the **Miranda** right to counsel," **McNeil v. Wisconsin**, 501 U.S. 171, 176, 115 L.Ed.2d 158, 111 S.Ct. 2204 (1991), "is designed to prevent police from badgering a defendant into waving her previously asserted **Miranda** rights." **Michigan v. Harvery**, 494 U.S. 344, 350, 108 L.Ed.2d 293, 110 S.Ct. 1176 (1990). To that end, the Supreme Court has held that a suspect who has invoked the right to counsel cannot be questioned regarding any offense unless an attorney is actually present. **Minnick v. Mississippi**, 498 U.S. 146, 112 L.Ed.2d 489, 111 S.Ct. 486 (1990); **Arizona v. Roberson**, 486 U.S. 675, 100 L.Ed.2d 704, 108 S.Ct. 2093 (1988).

The applicability of the 'rigid' prophylactic rule of **Edwards** requires courts to "determine whether the accused actually invoked his right to counsel." **Smith v. Illinois**, 469 U.S. 91, 95, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), quoting **Fare v. Michael C.**, 442 U.S. 707, 719, 61 L.Ed.2d 197, 99 S.Ct. 2560 (1979). To avoid difficulties of proof and to provide guidance to officers conducting interrogations, this is an objective inquiry. See **In Re H.V.** 2005 WL 627774 (Tex.App.-Fort Worth). Invocation of the **Miranda** right to counsel "requires, at a minimum, some statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." **McNeil v. Wisconsin**, 501 U.S. at 178. But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that

the suspect might be invoking the right to counsel, precedent does not
require the cessation of questioning. See **Ibid.** ("The likelihood that
a suspect would wish counsel to be present is not the test for
applicability of **Edwards**.") **Edwards v. Arizona**, 451 U.S. at 485.
(impermissible for authorities "to reinterrogate an accused in custody
if he has clearly asserted his right to counsel.").

      Although a suspect need not "speak with the discrimination
of an Oxford don," he must articulate his desire to have counsel
present sufficiently clearly that a reasonable police officer in the
circumstances would understand the statement to be a request for an
attorney." **Davis v. United States**, 512 U.S. 452, 114 S.Ct. 2350, 129
L.Ed.2d 362. (1994). The court in **McCarthy v. State**, 65 S.W. 3d 47,
51 (Tex.Cr.App. 2001), recently stated the appropriate rules to be
followed:

            Once a suspect has invoked the right to counsel
            during questioning by law enforcement, the Fifth
            Amendment right to counsel has been invoked and all
            interrogation by the police must cease until counsel
            is provided or the suspect reinitiates conversation.

      In Saldivar, the officer testified that the defendant had
waived her rights and the written confession contained a waiver of
rights. Nonetheless, the Applicant had previously told another officer
that she needed a lawyer and this was not contradicted by the State.
When a defendant informs police or a magistrate of his desire to
invoke his right to counsel, any subsequent waiver of that right will
be invalid when such a waiver is prompted by further police questioning.

See **Edwards v. Arizona**, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2nd 378 (1981). (See R.R. v. IV, August 7-8, 1995, p. 530, 532, 535, 537, 555-567, 575-578, 589).

Another Texas appellate case, **Mayes v. Texas**, 8 S.W. 3rd 354 (Tex.App.--Amarillo, 1999), is factually similar to the facts in Saldivar, and is instructive of the proper analysis required under Federal Law. The **Mayes** defendant was convicted of aggravated sexual assault. The court of appeals held that: (1) defendant's initial statement after she was read her rights that she did not know if she wanted to talk, followed immediately by a lengthy denial of wrongdoing, did not amount to an unambiguous assertion of the right to remain silent; (2) but her statements that she was "not talking" and was "going to shut up" amounted to such an assertion, and thus, her constitutional rights were violated by officers' continued admonishments and confrontation; (3) subsequent written confession was tainted by unlawful interrogation; (4) defendant's statement that she wanted to talk with her boyfriend to get some telephone numbers for a lawyer did not invoke her right to counsel; but (5) statement that "I have to get one for both of us" was an unambiguous assertion of her right to counsel; and (6) error in denying suppression was reversible. **Id.** In Saldivar, it is clear that the Applicant told the police officers to leave her alone and requested a specifically named attorney. Nonetheless they continued to interrogate her. (See **Mayes v. State**, infra, for a discussion where police statements can be deemed interrogation.)

The appellate court further reasoned that the Applicant "did not invoke the right to counsel during custodial interrogation", as

required by **Miranda**, 980 S.W. 2d at 490.  Characterizing Applicant's position as anything but custodial is clearly disingenuous given the facts of the case.  The appellate court acknowledged that the Applicant was "clearly surrounded by police and could not escape the parking lot during the standoff..." **Saldivar**, 980 S.W. 2d at 490.  Police reports indicate police had their weapons drawn.  The Court further stated that Applicant "was armed and not restrained." **Id.**  Realistically, when looking at the totality of the circumstances, Applicant was in custody. There were only three ways the scenario could have played out and none was with Applicant leaving the scene with her liberty and under her own initiative.  She could have used her gun on herself, she could have escalated the standoff with the police and forced them to open fire upon her, or, as she eventually did, she could have surrendered the gun to the numerous officers surrounding her.

Under **Miranda**, the decisive stage as to when the defendant's right to counsel attaches is when "custodial interrogation" begins. "Custodial interrogation is defined as questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 31 ALF 3d 565.

A suspect is "in custody" for purposes of **Miranda** when he is placed under formal arrest or when a reasonable person in the position of the suspect would understand the situation to constitute a restraint on freedom of movement to the degree that the law associates with formal arrest.  **United States v. Galbreth**, 846 F.2d 983, 986, n.1 (5th Cir. 1988); **United States v. Bengivenga**, 845 F.2d 592, 596 (5th Cir. 1988)

(en banc); see also **United States v. Gonzales**, 121 F.3d 928 (5th Cir. 1997), reh'g denied (Oct. 1, 1997), and cert.denied, 118 S.Ct. 726, 139 L.Ed.2d 664 (1988), and cert.denied 118 S.Ct. 1084, 140 L.Ed.2d 141 (1998).

The Fifth Circuit court has abandoned a four-prong test for determining whether a suspect is in custody, in favor of a "reasonable person" standard. The relevant inquiry in determining whether a suspect was in custody when he gave his statement is how a reasonable man in the suspect's position would have understood the situation. **Dowthitt v. Johnson**, (180 F.Supp.2d 832)(S.D. Tex.2000). Custody, for **Miranda** purposes, is determined by (1) inquiring into circumstances surrounding interrogation, and given those circumstances, (2) determining whether a reasonable person would have felt he was not at liberty to terminate the interrogation and leave. **Yarborough v. Alvarado**, 124 S.Ct. 2140.

Under this "reasonable person test," one not formally arrested is deemed to be in custody if, but only if, "a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest." **Bengivenga**, 845 F.2d at 596. The "reasonable person" for these purposes is one "neither guilty of criminal conduct and thus overly apprehensive, nor insensitive to the seriousness of the circumstances." **Id.**

Standard of Review

In Saldivar, State's Exhibit 33 is a videotape of the scene where the Applicant requested a lawyer specifically by name. Additionally, Officer Valencia, apparently in acknowledging Applicant's request,

testified that he promised Applicant she could have a lawyer as soon
as she surrendered, but none was ever provided. (Rec.Ex.#17). A court
of appeals will review de novo a trial court's ruling on a motion to
suppress if that ruling simply involved an application of law to
undisputed facts. **Maestas v. State**, 987 S.W. 2nd 59, 62 (Tx.Cr.App.
1999) cert. denied, 120 S.Ct. 93, 145 L.Ed.2nd 79, 68 USWL 3224, 1999.
There was never any evidence elicited at trial that the Applicant
initiated any further contact with the authorities.

In **Guzman v. State**, 955 S.W. 2nd 85, 89 (Tx.Cr.App. 1997),
credibility and demeanor were not issues, as the facts surrounding the
interrogation were preserved on videotape. If an individual indicates
in any manner, at any time prior to or during questioning during a
custodial interrogation, that he or she wishes to remain silent, the
interrogation must cease. Invocation of that right must be scrupulously
honored. **U.S.C.A. Const. Amend. 5.** Whether questioning of a suspect
sufficiently ended before it was later resumed, such that police
respected suspect's invocation of the right to remain silent, depends
upon the following: (1) whether the suspect was informed of his right
to remain silent prior to the initial questioning; (2) whether the
suspect was informed of his right to remain silent prior to subsequent
questioning; (3) length of time between initial and subsequent questioning;
(4) whether subsequent questioning focused on a different crime; and
(5) whether police honored the suspect's request for silence.
Interrogation must immediately cease if the suspect states that he
wants an attorney. As in **Guzman**, Applicant asserts that there was no
substantive attenuation between her unlawful interrogation and her

subsequent execution of a written confession, and thus, the confession was tainted by the ensuing interrogation, even though Applicant was again informed of her rights before the confession, where officers induced her to sign the written confession.  Officers were constitutionally bound to cease their efforts to persuade Applicant to talk after she specifically requested counsel, and they were obligated to forego resuming discussion about the crime until counsel was provided or Applicant re-initiated the dialogue.

Interrogation must immediately cease if the suspect states "that he wants an attorney...." **Miranda v. Arizona**, 384 U.S. 436, 474, 86 S.Ct. 1602, 1628, 16 L.Ed.2d 694, 723 (1966); **Edwards**, 451 U.S. 477, 484 85 (1981); **Dinkins v. State**, 894 S.W. 2nd 330, 350 (Tx.Cr.App.), cert.denied, 516 U.S. 832, 116 S.Ct. 106, 133 L.Ed.2nd 59 (1995).  And, like the invocation of the right to remain silent, the request for counsel must also be clear and unambiguous.  **Davis v. United States**, 512 U.S. 452, 460 61, 114 S.Ct. 2350, 2355, 129 L.Ed.2nd 362, 372 (1994); **Dinkins**, 894 S.W. 2d at 350 51.  In other words, the totality of circumstances inherent in the case must illustrate that the suspect "actually invoke[d] his right." **Id.** at 351.  And, whether he did depends upon whether the "suspect express[ed] a definite desire to speak to someone, and that person be an attorney." **Mayes**, 8 S.W. 3rd at 359 citing **Dinkins**, 894 S.W. 2nd at 352.

It is likely that the State may put forth the argument that was soundly rejected in **Mayes**.  In **Mayes**, the State wrongfully asserted that no violation occurred because 1) appellant resumed speaking after the officers pressed upon her the need to talk, and 2) their comments

took the form of statements as opposed to questions. **Mayes**, 8 S.W. 3rd at 360. As to the former, after she invoked her right to silence, the officers continued their interrogation without again Mirandizing her. Furthermore, they allowed merely seconds, at most, to pass before resuming their quest to induce her to speak. And, at those times when their attempts were met with silence, they again began to urge her to speak. Lastly, the interrogation which ensued, more often than not, encompassed the very incident for which she was arrested as opposed to some other crime. Consideration of this evidence in the framework suggested by **Maestas** lead the **Mayes** court to conclude that the officers simply ignored appellant's statements that she no longer cared to speak. If one review the record in Saldivar, the officers went so far as to imply that the Lord himself wished for her to speak to them. Simply put, "[a] law enforcement officer may not continue to question the suspect until the officer succeeds in persuading the suspect to change [her] mind and talk," **Dowthitt v. State**, 931 S.W. 2nd at 257, and then claim she waived her right to silence because he succeeded in making the suspect talk again.

Nor can it be said that by uttering declaratory, as opposed to interrogatory, statements to Applicant the officers actions constituted something other than interrogation. Regardless of the tenor of their words, the officers were pressing her for information about the crime. Given this purpose, the form their words took was unimportant.

For similar reasons, the **Mayes** court also rejected the State's argument that she waived her right to remain silent because she

56

subsequently executed a written confession after again being Mirandized. This is so because there was no substantive attenuation between the violation of her rights and the officers' request that she sign the document. Indeed, the detectives themselves undoubtedly thought as much when one told her that "you're not going to be doing more than what you've done already" to induce her to execute the confession. Under these circumstances, further Mirandizing appellant meant nothing since "[t]he more times police inform a suspect of his rights in the face of his repeated invocation of one of those rights...the clearer it becomes that the police must not mean what they say." **Mayes** citing **United States v. Hernandez**, 574 F.2nd 1362, 1369 (5th Cir. 1978).

In assessing the harm emanating from such error, the Texas courts utilize the standard contained in Texas Rule of Appellate Procedure 44.2(a). The latter obligates a reviewing court to reverse the judgment unless it is determined beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Since Rule 44.2(a) is simply a reiteration of the old Rule 81(b)(2), **Mosley v. Texas**, 983 S.W. 2nd 249, 259 (Tx.Cr.App. 1998)(cert. denied 526 U.S. 1070, 119 S.Ct. 1466, 143 L.Ed. 2nd 550, 1999), precedent construing the latter is still helpful in making the assessment. That precedent instructs a reviewing court to analyze the source and nature of the error, whether or to what extent the error was emphasized by the State, its probable collateral implications, the weight a juror would probably place upon the error, and the likelihood that declaring the error harmless would encourage the State to repeat it with impunity. **Harris v. Texas**, 790 S.W. 2nd 568, 587 88 (Tx.Cr.App. 1989). And,

efforts that exceed lawful parameters. That
some may think those parameters favor the
guilty is little price for assuring that they
protect the innocent." **Arizona v. Roberson**,
486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).

Ground of Review No. 4

**General**

   The court of appeals unreasonably applied clearly established
Federal Law, as determined by the United States Supreme Court in
overruling Applicant's point of error that she suffered harm from the
failure of the trial court to instruct the jury about the limited
purpose for which evidence of extraneous offenses was admitted.

**Specific**

A) The court of appeals erred in overruling the Applicant's point of
error that she was harmed when the trial court erred in admitting
evidence of extraneous misconduct despite the State's failure to give
adequate, specific, timely notice under Rule 404(b) of the then Texas
Rules of Criminal Evidence.

B) The court of appeals erred in overruling the Applicant's point of
error that she was harmed when the trial court abused its discretion
in admitting unfounded prejudicial evidence of extraneous misconduct
during the guilt/innocence phase of the trial.

C) The court of appeals erred in overruling the Applicant's point of
error that she was harmed when the trial court erred in admitting
harmful hearsay evidence regarding extraneous misconduct in violation
of Applicant's right to confront and cross-examine witnesses against

her.

D) The court of appeals erred in overruling the Applicant's point of error that she was harmed when the trial court erred in failing to give a limiting instruction regarding extraneous misconduct, as required by Rule 105(a) of the then Texas Rules of Criminal Evidence.

Facts Pertaining to the Above Referenced Items of Error Under Ground No.4

Selena Quintanilla Perez, the complainant, was involved in numerous business enterprises, one of which was the Selena Fan Club. Threatened from the outset with extraneous embezzlement charges, Applicant relentlessly sought discovery of Selena Fan Club business records relating to those allegations. (Rec.Ex.18).  Applicant filed her Defendant's Motion for Discovery and Inspection seeking discovery of any and all records, documents or summaries, supporting a claim that Applicant had embezzled from the victim.  (C.R. p. 339).

During pretrial hearings, fan club vice-president Irene Hererra testified that the victims' father, Abraham Quintanilla, took possession from her of five fan club notebooks including a "blue book" approximately six weeks before Selena's death.  (Rec.Ex.#19).

Applicant issued subpoenas duces tecum to Abraham Quintanilla seeking any and all records documenting embezzlement by Applicant from the fan club or other enterprises, (C.R. p. 545), and all records of the fan club, specifically including a "blue book" of the fan club. (C.R. p. 569).  In response, Quintanilla's attorney, Tony Canales, appeared to resist the subpoenas.  He stated that some, but not all, of the records had been turned over to the State.  (Rec.Ex.#20).

Applicant was thus denied discovery of those documents (C.R. p. 339-348), though Canales and the State were both ordered to produce all such records in their possession for an in camera inspection. (Rec. Ex.#21). Applicant requested they be sealed and made a part of the record. (Rec.Ex.#22).

From the two boxes of materials turned over, the trial court released one document to Applicant. (Rec.Ex.#23). Applicant objected throughout the pretrial and trial that she had received no documents relating to the fan club, and that the denial of the requested discovery constituted prosecutorial misconduct and denied her the right to effectively confront and cross-examine the witnesses against her. (Rec.Ex.#24).

Applicant also filed her motions pursuant to Rule 404(b) of the then Texas Rules of Criminal Evidence requesting reasonable pretrial notice of the State's intent to introduce extraneous evidence in its case in chief, (C.R. p. 352), and her Motion for Determination of Admissibility of Extraneous Offenses. (C.R. p. 353). During the hearing on those Motions, the State contended that evidence that Quintanilla suspected Applicant of embezzlement was not evidence of extraneous misconduct. (Appellant's brief, p. 30). Defense counsel contended that the evidence was indeed evidence of extraneous misconduct and that it was objectionable because a) the embezzlement could not be proven beyond a reasonable doubt; b) it was irrelevant; and c) it was prejudicial. (Rec.Ex.#25). The trial court was apparently wrongfully convinced the testimony did not constitute evidence of extraneous misconduct and ruled Quintanilla's suspicions admissible.

(Rec.Ex.#26)(emphasis added).

The Prosecutor assured the Court and Defense Counsel:

> There are-there is going to be some evidence introduced about
> the fact that Mr. Quintanilla thought that the defendant was
> embezzling funds from him. Now, there is a difference, there,
> Judge, between thinking somebody is doing it and somebody
> actually doing it. <u>There won't be any evidence introduced--</u>
> <u>at least not from the State--about any funds being embezzled</u>
> <u>or anything like that.</u>  (Rec.Ex.#26).

At trial, the State questioned Quintanilla about the alleged
embezzlement. During a bench conference, Applicant objected that the
State's proffer went beyond the Prosecutor's pretrial representations
and renewed the previous "prosecutorial misconduct/confrontation clause"
objections arising from the denial of the requested discovery of the
records forming the basis of Quintanilla's suspicions. The trial court
overruled the objections as to Quintanilla's suspicions, but <u>cautioned</u>
<u>the prosecution not to go into any details</u> underlying those suspicions.
(Rec.Ex.#27).

Quintanilla then testified that after receiving calls and
letters from mothers who claimed their children sent in their annual
$22.00 fan club fees but did not receive the memorabilia to which the
fees entitled them, he came to believe Applicant was taking money from
the Selena fan club. Quintanilla told Applicant she was tarnishing
Selena's image. (Rec.Ex.#27). He further testified that he recovered
records from the fan club, "and we found proof that she was stealing."
(Rec.Ex.#28). This clearly goes beyond the stated proffer that

Quintanilla only suspected Applicant of stealing and the State's representation that only suspicions would be introduced. Quintanilla testified that he then confronted Applicant with the documents he had found, and told her he was going to the police and "make an investigation for embezzlement." (Rec.Ex.#29).

Suzette Quintanilla Arriaga, the complainant's sister, testified that at that same meeting, she told Applicant she was a liar and a thief. (Rec.Ex.#30). Chris Perez, the complainant's husband, testified over hearsay objections, that the victim removed Applicant as a signator on business checking accounts because "Selena and I didn't trust her." (Rec.Ex.#31).

Over Applicant's hearsay and confrontation clause objections, the trial court admitted for the <u>truth of the matter asserted</u> further testimony from Suzette Quintanilla Arriaga that the complainant said she was going to fire Applicant because Applicant was embezzling. The State made no attempt and the trial court did not require the State, to fit this pure hearsay statement into any exception. See **Crawford v. Washington**, 541 U.S. 36, 52-53, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). Clearly it was not a dying declaration. (Rec.Ex.#32). The trial court denied Applicant's request that the jury be instructed to disregard the testimony. (Rec.Ex.#33).

Later, over Applicant's "extraneous offense" and "business records" objections, (Rec.Ex.#34), the State introduced as part of State Exhibit 122, a fan letter complaining of not receiving from the fan club merchandise for which the writer had paid. Applicant filed her Defendant's Requested Instruction No. 3, instructing the jury it

could not consider evidence of extraneous offenses unless proved beyond
a reasonable doubt. (C.R. p. 101). This appropriate request was denied
at both the Guilt/Innocence and Punishment phase of the trial. (Rec.
Ex.#35). Defense Counsel further objected to the failure of the Guilt/
Innocence and Punishment charges to include an instruction limiting
the jury's consideration of extraneous offenses. (Rec.Ex.#35).

Applicant was sentenced October 26, 1995 (C.R. p. 162).
Forty days later, on December 5, 1995, Quintanilla appeared on
international television with the fan club records. (Rec.Ex.#36).
The Fourteenth Court incorrectly opined that all of this evidence was
properly admitted and that the defense counsel had failed to timely
request a limiting instruction. **Saldivar**, 980 S.W. 2nd at 491.

### ARGUMENTS AND AUTHORITIES

(As all these points are inextricably intertwined, they wil
be discussed in unison.)

Texas Rule of Evidence 404(b), like its Federal counterpart,
allows that extraneous offenses may be admissible "provided that upon
timely request by the accused in a criminal case, reasonable notice
is given in advance of trial of intent to introduce in the State's
case in chief such evidence other than that arising in the same
transaction." Tex.R.Evid. 404(b).

The only viable test or standard for determining whether
evidence of prior misconduct will be admitted in a criminal prosecution
is whether the prosecution can show that the offense or transaction
is relevant to a material issue and that the probative value of the
evidence to the trier of fact outweighs its prejudicial or inflammatory

nature. **Templin v. Texas**, 771 S.W. 2nd 30 (Tx.Cr.App. 1986). Even if deemed probative, evidence will not be admitted if its prejudicial and its inflammatory nature outweighs any probative affect. **Id.** at 33.

    Disregarding a statutory provision is the type of omission that does not require a timely request or objection by a party. Such omissions can be raised for the first time on appeal. Vernon's Ann. Texas C.C.P. art. 36.19. Huizar, in utilizing the analysis in **Templin**, began by addressing the court of appeals' holding that the reasonable doubt instruction is constitutionally required. At the time of this trial, **Geesa v. State**, 820 S.W. 2d 154 (Tex.Crim.App. 1991), was still in full force and effect. Subsequent to the filing of the 11.07 State Writ, **Geesa** was overruled by **Paulson v. State**, 28 S.W. 3d 570 (Tex. Crim.App. 2000). However, that reversal dealt with the requirement, or lack thereof, of the definition of beyond a reasonable doubt, and not the instruction that the State must still prove all extraneous offenses beyond a reasonable doubt. Although submission of the reasonable doubt definition itself is no longer constitutionally mandated at guilt, it serves "to implement the constitutional requirement that a conviction cannot stand 'except upon proof beyond a reasonable doubt'". **Huizar v. State**, 12 S.W. 3rd 479, 482 (Tx.Cr.App. 2000) citing **Geesa**, 820 S.W. 2nd at 156, 162 citing **In re Winship**, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2nd 368 (1970); **Mitchell v. State**, 931 S.W. 2nd 950 (Tx.Cr.App. 1996); **Coble v. State**, 871 S.W. 2nd 192 (Tx. Cr.App. 1993). In **Mitchell**, the instruction requesting that the proof be proved beyond a reasonable doubt was requested and denied. **Mitchell**,

931 S.W. 2nd at 951, 954; **Rodgers v. State**, 180 S.W. 3d 716-721.

In **Posey v. State**, 966 S.W. 2nd 57 (Tx.Cr.App. 1998), the Court again addressed the potential for jury charge "error" arising from an omission in the charge that was not objected to at trial.  The Texas Code of Criminal Procedure, articles 36.14, Charge of Court, and 36.19, Review of Charge on Appeal, govern submission of jury instructions and determination of "error" in the charge.  "Error" due to erroneous omissions in the jury charge can result from either "omissions of issues upon which a trial court has a duty to instruct without a request from either party, or issues that have been timely brought to the trial court's attention."  **Id.** at 61 fn. 9; see also **Id.** at 63 64.  Disregarding a statutory provision referenced in article 36.19 has thus repeatedly been deemed the type of omission that does not require a timely request or objection by a party.  See generally **Almanza v. State**, 686 S.W. 2nd 157 (Tx.Cr.App. 1985)(op. on reh'g)(different standards of assessing charge error apply depending upon whether or not error was subject to timely objection).  **Huizar**, 12 S.W. 3rd at 484-485.
The Texas Code of Criminal Procedure Article 36.19 provides in part:

> Whenever it appears by the record in any criminal action
> upon appeal that any requirement of Articles 36.14, 36.15,
> 36.16, 36.17 and 36.18 has been disregarded, the judgment
> shall not be reversed unless the error appearing from the
> record was calculated to injure the rights of defendant,
> or unless it appears from the record that the defendant
> has not had a fiar and impartial trial.

It was noted in **Huizar** that "[i]f Article 36.14 imposes such

a duty, then a trial court 'errs' in failing to sua sponte instruct the jury on a defensive issue that is raised by the evidence." **Id.** at 61, fn. 6. (See Ground of Review No. 6 for a related discussion). The previous discussion simply lends more credibility to the issue in Saldivar that when the instruction was indeed requested in writing by defense counsel and denied by the trial court, then reversal must be required. See **Ex Parte Varelas**, 45 S.W. 3d at 631-632 (Tx.Crim.App. 2001); **Rodriguez v. State**, 137 S.W. 3d 228, 231 (Tx.App.--Houston [1st Dist], 2004, no pet.).

In **Poole v. State**, 974 S.W. 2nd 892 (Tex.App.--Austin, 1998), it was held that the trial court should have included an instruction in the jury charge, at both the guilt innocence phase and the punishment phase, directing the jury not to consider extraneous offenses unless it first determined the existence of those offenses beyond a reasonable doubt. See **Allen v. State**, 47 S.W. 3d 47 (Tex.App.--Fort Worth, 2001).

As has been discussed, it has previously been held that, absent a defendant's request, there is no error when a trial court fails to give an instruction requiring the jury to find beyond a reasonable doubt that the defendant committed the extraneous offenses before considering evidence of those offenses. The trial court, however, is required, when punishment phase evidence of extraneous offenses or bad acts evidence is admitted, to sua sponte instruct jury on reasonable-doubt standard of proof concerning extraneous offenses and bad acts. Failure to submit this instruction is error. Vernon's Ann. Texas C.C.P. art. 37.07 §3(a)(1). **Allen**, 47, S.W. 3d 50.

In determining whether the prejudicial effect of evidence

substantially outweighs its probative value, several factors should
be considered: (1) How compellingly evidence ofthe extraneous
misconduct serves to make more or less probable a fact of consequence;
(2) The potential the "other crime, wrong, or act" has to impress the
jury in some irrational but indelible way; (3) How much trial time
does the proponent need to develop evidence of the extraneous misconduct
and (4) How great is the proponent's need for the extraneous transaction.
**Lane v. Texas**, 933 S.W. 2nd 504, 520 (Tx.Cr.App. 1996). In Saldivar,
it can be said that this extraneous evidence of possible, and unproven
embezzlement charges, was only moderately relevant. In analyzing the
second factor, it is obvious that the jury could view this evidence
as providing a motive for the underlying crime. While that might have
been an acceptable reason for admitting this evidence, though requiring
a limiting instruction, the trial court ruled that this was not extraneous
evidence at all and thus was not in need of the definition of "beyond
a reasonable doubt". The jury could believe or disbelieve this evidence
on a scintilla of proof. Certainly the Fourteenth Court of Appeals
is not stating that this is its definition of justice?

In **Abdnor v. State, IV**, 871 S.W. 2nd 726 (Tx.Cr.App. [en banc]
1994), it was held that the admission of extraneous offenses, without
the proper limiting instruction, requiring the jury to believe that
the State proved the offenses beyond a reasonable doubt, caused sufficient
harm to require reversal. Appellant was convicted by a jury of murder.
Punishment was assessed at life imprisonment. The court of appeals
affirmed appellant's conviction. **Abdnor v. State, I**, 756 S.W. 2nd
815 (Tex.App.-Dallas 1988). On discretionary review, it was held the

trial judge erred in overruling appellant's objection to the jury charge's failure to include a limiting instruction concerning an extraneous offense. **Abdnor**, 871 S.W. 2nd at 729. The case was then remanded to the court of appeals for a harm analysis pursuant to **Almanza**, supra. **Abdnor v. State, II**, 808 S.W. 2nd 476 (Tx.Cr.App. 1991). On remand, the court of appeals held there was no harm in the trial judge's failure to include a limiting instruction in the jury charge. **Abdnor v. State, III**, 845 S.W. 2nd 302 (Tex.App.-Dallas 1992). Petition for discretionary review was granted to determine whether the court of appeals erred in conducting its **Almanza** harm analysis. The case was then reversed. See **Abdnor, IV.**

The importance of proper instructions in the trial judge's charge to the jury is apparent in the context of the division of responsibilities between judge and jury in a jury trial. While states have traditionally been given broad leeway in dividing responsibility between judges and juries in criminal cases, **Spencer v. Texas**, 385 U.S. 554, 560, 87 S.Ct. 648, 652, 17 L.Ed. 2nd (1967), Texas has followed the common law in assigning a fact finding purpose to the jury. **Abdnor IV** at 731. The Court has consistently held, and the Code of Criminal Procedure explicitly provides, that the "juror's are the exclusive judges of the facts...[and] of the issues of facts." **Ex parte Thomas**, 638 S.W. 2nd 905, 907 (Tx.Cr.App. 1982). See also **Penagraph v. State**, 623 S.W. 2nd 341 (Tx.Cr.App. 1981); **Weatherford v. State**, 31 Tx.Crm. 530, 21 S.W. 251 (App. 1893); **Short v. State**, 16 Cr.R. 44 (1879); and Tex.Code Crim.Proc.Ann. article 26.13.

However, while the "jury is the exclusive judge of the facts,

...it is bound to receive the law from the court and be governed thereby." Tex.Code Crim.Proc.Ann. art. 36.13. In **Williams v. State**, 547 S.W. 2nd 18, 20 (Tx.Cr.App. 1977), it was explained "[t]he law must come from the court, the facts must be decided by the jury, and the charge, to instruct the jury properly, must apply the law to the facts raised by the evidence." See also **Daniels v. State**, 633 S.W. 2nd 899 (Tx.Cr. App. 1982); **Doyle v. State**, 631 S.W. 2nd 732, 738 (Tx.Cr.App. 1982) (Op. on reh'g); **Rider v. State**, 567 S.W. 2nd 192, 195 (Tx.Cr.App. 1978). The function of the jury charge is to instruct the jury on applying the law to the facts. **Abdnor, IV** at 732.

It is not the function of the charge merely to avoid misleading or confusing the jury. It is the function of the charge to lead and to prevent confusion. A charge that does not apply the law to the facts fails to lead the jury to the threshold of its duty. **Williams**, 547 S.W. 2nd at 20. See also **Williams v. Texas**, 622 S.W. 2nd 578, 579 (Tx.Cr.App. 1981). Moreover, because the charge is so essential to the jury's deliberations, "[i]t is clear that a charge must include an accurate statement of the law." **Cane v. State**, 698 S.W. 2nd 138 (Tx.Cr.App. 1985). See also **Johnson v. Texas**, 571 S.W. 2nd 170, 173 (Tx.Cr.App. 1978)("It is well established that a correct instruction of the law relating to the offense charged must be given to the jury."). When the trial judge fails to correctly charge the jury on the applicable law, the integrity of the verdict is called into doubt because.... [allowing] the jury to receive an application of the law to the facts from the partisan advocates without a neutral and unbiased instruction on the matter in the charge...[risks] the degeneration of trial by jury

to a debating contest, where the persuasiveness of competing applications of the law to the facts determines guilt or innocence. **Id.** at 174. There should be but one controlling application of the law to the facts, and that application should come from the court. Its absence impairs the right to trial by jury and, therefore, by definition, is "calculated to injure the rights of the defendant", to a trial by jury. **Williams**, 547 S.W. 2nd at 20. Consequently, an erroneous or an incomplete jury charge jeopardizes a defendant's right to jury trial because it fails to properly guide the jury in its fact finding function. **Abdnor IV**, at 732.

An erroneous or incomplete jury charge, however, does not result in automatic reversal of a conviction. Article 36.19 of the Texas Code of Criminal Procedure prescribes the manner of appellate review for jury charge error. **Almanza**, 686 S.W. 2nd at 171. When a reviewing charge errors, an appellate court must undertake a two step review: first, the court must determine whether error actually exists in the charge, and second, the court must determine whether sufficient harm resulted from the error to require reversal. **Abdnor IV** at 732; See also **Gibson v. Texas**, 726 S.W. 2nd 129, 132 (Tx.Cr.App. 1987). The Standard to determine whether sufficient harm resulted from the charging error to require reversal depends upon whether appellant objected. Where there has been a timely objection made at trial, an appellate court will search only for "some harm." By contrast, where the error is urged for the first time on appeal, a reviewing court will search for "egregious harm." **Almanza**, 686 S.W. 2nd at 171, and **Arline v. State**, 721 S.W. 2nd 348, 351 (Tx.Cr.App. 1986). Obviously the

"some harm" standard is applicable in Saldivar. **Arline**, 721 S.W. 2nd

348, further explained the "some harm" analysis enunciated in **Almanza**.

It was noted that "the presence of any harm, regardless of degree...

is sufficient to require a reversal of the conviction.  Cases involving

preserved charging error will be affirmed only if **no harm** has occurred."

**Arline**, 721 S.W. 2nd at 351 (emphasis in original).  See also **Gibson**,

726 S.W. 2nd at 133.  It has been recognized, however, that the burden

of proof lies with the defendant to "persuade the reviewing court that

he suffered some actual harm as a consequence of the charging error.

If he is unable to do so, the error will not result in a reversal of

his conviction."  **LaPoint v. State**, 750 S.W. 2nd 180, 191 (Tx.Cr.App.

1986)(Op. on reh'g).  See also **Belyeu v. State**, 791 S.W. 2nd 66, 75

(Tx.Cr.App. 1989).

  In contrast to article 36.19, rule 44 establishes the general

standard of appellate review for trial error.  See **Belyeu**, 791 S.W.

2nd at 75; **Beathard v. State**, 767 S.W. 2nd 423, 432 (Tx.Cr.App. 1989);

and **Rose v. Texas**, 752 S.W. 2nd 529, 553 (Tx.Cr.App. 1987).  It is

important to remember that the trial court in Saldivar took no steps

to limit any incorrect jury inference either at the time the extraneous

offenses were introduced or when the jury was charged.  See **Smith v.**

**State**, 5 S.W. 3rd 673 (Tx.Cr.App. 1999).  In **Rose**, it was stated there

is an presumption that the jury will properly consider evidence when

correctly instructed by the trial judge.  **Id.**, 752 S.W. 2d at 554

(citing **Cobarrubio v. State**, 675 S.W. 2nd 749, 752 (Tx.Cr.App. 1983).

  It has been that the former Rule 81(b)(2), now Rule 44 of

the Texas Rules of Appellate Procedure, is essentially the codification

of the "harmless error" standard for constitutional errors enunciated by the United States Supreme Court in **Chapman v. California**, 386 U.S. 18, 24, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), supra; **Harris**, 790 S.W. 2nd 584; and **Mallory v. State**, 752 S.W. 2nd 566, 569 570 (Tx.Cr.App. 1988). In **Chapman**, the Supreme Court stated: "The application of a state harmless error rule is...a state question where it involves only errors of state procedure or state law." **Chapman**, 386 U.S. at 21, 87 S.Ct. at 826. Thus, in reviewing the applicability of former Rule 81(b)(2), it has been held that former Rule 81(b)(2)'s "harmless error" analysis typically applies to those trial errors amounting to a denial of federal **or** state constitutional rights where there is no countervailing procedural rule or statutory provision. **Rose**, 752 S.W. 2nd at 554. See also **Belyeu**, 791 S.W. 2nd at 75, and **Erwin v. State**, 729 S.W. 2nd 709 (Tx.Cr.App. 1987). By contrast, art. 36.19, and the **Almanza** standard of review, is limited to violations of article 36.14 through article 36.18 which do not implicate state or federal constitutional rights. See **Rose**, 752 S.W. 2nd at 553. In situations where a charging error implicates a state or federal constitutional right, we have applied the "harmless error" analysis from Rule 44 rather than an **Almanza** harm analysis. See **Rose**, 752 S.W. 2nd at 553-554.

It is now axiomatic that a defendant is to be tried only on the crimes alleged in the indictment and not for being a criminal generally. **Abdnor II**, 808 S.W. 2nd at 478 citing **Wilkerson v. State**, 736 S.W. 2nd 656, 659 (Tx.Cr.App. 1987), and **Crank v. State**, 761 S.W. 2nd 328, 341 (Tx.Cr.App. 1988). Thus, evidence of extraneous offenses or bad acts committed by the defendant may not be introduced during

the guilt/innocence portion of the trial to show the defendant acted
in conformity with his criminal nature. **Lockhart v. State**, 847 S.W.
2nd 568, 570 (Tx.Cr.App. 1992); **Montgomery v. State**, 810 S.W. 2nd at
386 (Tx.Cr.App. 1990); **Abdnor II**, 808 S.W. 2nd at 478; Tex.R.Crim.Evid.
404(b). This is because evidence of extraneous offenses "is inherently
prejudicial, tends to confuse the issues in the case, and forces the
accused to defend himself against charges which he had not been notified
would be brought against him." **Crank**, 761 S.W. 2nd at 341. Additionally,
the Court of Criminal Appeals has also recognized that a greater prejudice
to the defendant results from the revelation of past criminal conduct
than non criminal "bad acts". **Plante v. State**, 692 S.W. 2nd 487, 490
n. 3 (Tx.Cr.App. 1985). Embezzlement, if proved, would be considered
criminal conduct.

Nonetheless, evidence of extraneous offenses is admissible
for a limited purpose where such evidence is material and relevant to
a contested issue in the case. **Abdnor II**, 808 S.W. 2nd at 478 (emphasis
added); **Albrecht v. State**, 486 S.W. 2nd 97, 100 (Tx.Cr.App. 1972); see
also **Lockhart**, 847 S.W. 2d at 571. The extraneous offenses admitted
in Saldivar were clearly designed to go to motive. Thus, a limiting
instruction was statutorily required. Simply because one says that
these acts were not extraneous or contextual does not make it so,
especially in light of the lack of analysis by the trial court and the
court of appeals. Though the State did not put forth this argument
at trial or on appeal, it is conceivable that in response, the State
may try to argue that this was contextual evidence citing **Garza v.
Texas**, 2 S.W. 3rd 331 (Tex.App.--San Antonio 1999 [pet. ref'd.] 1999;

see also **Carter v. State**, 145 S.W. 3d 702 (Tex.App.--Dallas, 2004),
which discussed some transaction contextual evidence, holding that the
trial court's admission of the evidence was not harmless.

ARGUMENTS AND AUTHORITIES

**Rule 401 and 403 Analysis**

Evidence must satisfy two requirements to be considered relevant
-- first, materiality, and second, probativeness.  For evidence to be
material it "must be shown to be addressed to the proof of a material
proposition, i.e., 'any fact that is of consequence to the determination
of the action'.  'If the evidence is offered to help prove a proposition
which is not a matter in issue, the evidence is immaterial.'"  1 Steven
Goode et al., Texas Practice:  Guide of the Texas Rules of Evidence:
Civil and Criminal° 401.1 (2$^{nd}$ed. 1993 & Supp. 1995).  If the proponent
establishes that the proffered evidence is material, Rule 401 also
requires that the proponent establish the evidence is probative, i.e.,
the proffered evidence must tend to make the existence of the fact
"more or less probable than it would be without the evidence."  **Id.**
The proffered evidence is relevant if it has been shown to be material
to a fact in issue and if it makes that fact more probable than it would
be without the evidence.

Appellate review of a trial court's decision to admit extraneous
offense evidence is also a two-fold process.  **Reyes v. State**, 69 S.W.
3d 725, 735 (Tex.App.--Corpus Christi, 2002) citing **Montgomery**, 810
S.W. 2nd 386.  Rule 403 provides that relevant evidence may be excluded
if its probative value is substantially outweighed by the danger of
unfair prejudice.  Tex.R.Evid. 403.  **Reyes**, 69 S.W. 3rd 736 citing

**Montgomery**, 810 S.W. 2nd 392 quoting **United States v. Preston**, 608 F. 2nd 626, 639, n. 16 (5th Cir. 1979). Again, the abuse of discretion standard is applied when analyzing the trial court's decision to admit evidence over a Rule 403 objection. **Reyes**, 69 S.W. 3rd 736 citing **Montgomery**, 810 S.W. 2nd 391. This analysis requires more than simply determining whether the trial court conducted a balancing of probativeness and prejudice. **Id.** at 392. Instead, the trial court's decision to admit the extraneous offense evidence is measured against the relevant criteria by which a Rule 403 decision is to be made. **Id.** When the relevant criteria is viewed objectively and leads to the conclusion that the danger of unfair prejudice substantially outweighed the probative value of the proffered evidence, the appellate court should declare that the trial court erred in failing to exclude it. **Id.** Finally, when determining whether an abuse of discretion occurred, only evidence adduced at the "out of the presence of the jury" [sic] hearing should be considered, because the ruling was based on it rather than evidence introduced later. **Reyes**, 69 S.W. 3rd 737 citing **Rachal v. State**, 917 S.W. 2nd 799, 809 (Tx.Cr.App. 1996); **Hardesty v. State**, 667 S.W. 2nd 130, 135 n. 6 (Tx.Cr.App. 1984).

Evidence, even if relevant, which the Appellant does not assert SX 98 is, may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice. Tex.R.Evid. 403.

A Rule 403 balancing test includes the following factors:

(1) how compellingly the evidence serves to make a fact of consequence more or less probable;

(2) the potential the evidence has to impress the jury in

some irrational but nevertheless indelible way;

(3) the time the proponent will need to develop the evidence during which the jury will be distracted from consideration of the indicted offense;

(4) the force of the proponent's need for this evidence to prove a fact of consequence, i.e., does the proponent have other probative evidence available to him to help establish this fact, and is this fact related to an issue in dispute. **Alexander**, 88 S.W. 3rd 778 citing **Wyatt v. State**, 23 S.W. 3rd 18, 26 (Tx.Cr.App. 2000).

<u>HARM ANALYSIS</u>

The reviewing court is to disregard the error unless it affected the Appellant's substantial rights. A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. **King v. State**, 953 S.W. 2nd 266, 271 (Tx.Cr.App. 1987) citing **Kotteakos v. United States**, 328 U.S. 750, 776 (1946). In making this determination, the record is reviewed as a whole. **Id.** at 764-65.

If the reviewing court harbors "grave doubts" that an error did not affect the outcome, that court must treat the error as if it did. **United States v. Lane**, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed. 2nd 814 (1986). The United States Supreme Court has defined "grave doubts" to mean "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." **O'Neal v. McAninch**, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed. 2nd 947, 63 USLW 4126 (1995). If the reviewing court is unsure