whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict.  **Id.**

The evidence in Saldivar is easily distinguished as this evidence is clearly not necessary for the proving of the ultimate issue or a fact of consequence.  When extraneous offenses are admitted for a limited purpose, the defendant is entitled to an instruction by the trial judge to the jury limiting the jury's consideration of the extraneous offenses to those purposes for which they are admitted. **Porter v. State**, 709 S.W. 2nd 213, 215 (Tx.Cr.App. 1986); **Crawford v. State**, 696 S.W. 2nd 903, 907 (Tx.Cr.App. 1985); **Hitchcock v. State**, 612 S.W. 2nd930, 931 (Tx.Cr.App. 1981).  Failure to give a limiting instruction, upon timely request, is "reversible error."  **Abdnor IV**, at 739 citing **Porter**, 709 S.W. 2nd at 216.

It has been acknowledged that the introduction of extraneous offenses to the jury is inherently "prejudicial," **Sattiewhite v. State**, 786 S.W. 2nd 271, 285 (Tx.Cr.App. 1989), and hence, harms the defendant because it requires the defendant to defend against not only the offense charged but also his uncharged actions.  See **Orank**, 761 S.W. 2nd at 341; **Robinson v. Texas**, 701 S.W. 2nd 895, 899 (Tx.Cr.App. 1985).  See also **Plante**, 692 S.W. 2nd at 490 n. 3.  The admission of extraneous offenses also prejudices the defendant because of the jury's natural inclination is to infer guilt to the charged offense from the extraneous offenses.  See **Lockhart**, 847 S.W. 2nd at 570, and **Templin**, 711 S.W. 2nd 32.  A manner of lessening the prejudice from the extraneous offense is to give a limiting instruction to the jury.  **Robinson**, 701

S.W. 2nd at 899. But where no limiting instruction is given, however, it must be concluded that any prejudice resulting from introduction of the extraneous offense is unabated. See **Id.**

In **Wood v. Texas**, 118 Tex.Crim. 99, 39 S.W. 2nd 1094, 1095 (App. 1931), the Court of Criminal Appeals noted that a limiting instruction is not necessary where the extraneous offenses are so dissimilar to the charged offense that the jury cannot mistakenly draw a connection between the charged offense, and the extraneous offenses. **Id.** 39 S.W. 2nd at 1095. See also, 23 Tex.Jur. 3d Criminal Law S 2818 (1982)(and cases cited under n. 22). Though the State in Saldivar may attempt to rely upon this argument, it is obvious that the extraneous testimony concerning the embezzlement was of vital importance to their case. The State went to great lengths, upon discovering their less than forthright notice, to convince the court to allow the testimony. The underlying assumption, of course, was that the unlimited introduction of extraneous offenses similar to the charged offense harms a defendant because the jury will inevitably presume guilt from the extraneous offenses to the charge offense. See **Wood**, 39 S.W. 2nd at 1095. It has subsequently been found in a number of cases that the admission of extraneous offenses similar to the charged offense, and admitted without limiting instructions, harmed the defendant because the jury was allowed to convict on the assumption that the defendant was acting in conformity with a criminal character. **Abdnor IV** at 739; See **Lockhart**, 847 S.W. 2nd at 570. Though the extraneous uncharged offense of embezzlement admitted in Saldivar is clearly different from the offense of murder, it is clearly apparent

from the record that the State relied upon this evidence to aid in the gaining of a conviction of the Applicant. The State continually attempted to connect the murder to the threatened charge by the Quintanilla family of embezzlement.

In **Hitchcock**, the trial judge denied **Hitchcock's** request for an instruction in the charge which limited the jury's consideration to the extraneous offenses. The court of appeals held that a limiting instruction was warranted and reversed the conviction. **Id.**, at 931. Similarly, in **Johnson v. State**, 509 S.W. 2nd 639 (Tx.Cr.App. 1974), the trial judge denied **Johnson's** written request for an instruction in the charge which limited the jury's consideration of the extraneous robbery. The Court held the trial judge's failure to give a limiting instruction in the jury charge was reversible error because the charge, as given, allowed the jury to consider the extraneous robbery as evidence of **Johnson's** guilt in the charged offense, rather than simply proving his identity. **Id.**, at 640. Further, in **Springfield v. State**, 356 S.W. 2nd 940, 941 (Tx.Cr.App. 1962), the Court held the trial judge committed reversible error by failing to given an instruction in the charge which limited the jury's consideration of the other sales to the purpose for which they were admitted, that is, to prove **Springfield** was a "dealer" in securities. **Id.**, at 941. Finally, in **Jones v. Texas**, 296 S.W. 2nd 271 (Tx.Cr.App. 1956), the Court held the trial judge's failure to give a limiting instruction in the jury charge was reversible error because the evidence that **Jones** had used children to sell whiskey prejudiced the jury. **Abdnor**, 845 S.W. 2nd at 309.

In conducting its harm analysis in Saldivar, the Fourteenth

Court of Appeals failed to discuss the cases just cited nor cite any
other case law which addressed the harm resulting from the unlimited
introduction of extraneous offenses.  Thus, it is only logical that
in reviewing the court of appeals' harm analysis, keeping in mind that
the court neglected to discuss and essentially rejected the Court of
Criminal Appeals decisions which hold the harm resulting from the
introduction of extraneous offenses needing to be ameliorated,
otherwise, there is "some harm",the Saldivar opinion should be remanded
back to the trial court.  The Court of Criminal Appeals in **Sattiewhite**,
supra, noted that while the cases discussed decided prior to the
enunciation of the "harm analysis" in **Almanza**, their holdings that the
unlimited admission of extraneous offenses are reversible error, are
unaffected by **Almanza**.  In **Almanza**, the Court merely required a defendant
to show harm from a charging error before it would reverse.  This
requirement that harm be shown had no effect upon the recognition that
certain charging errors are inherently harmful. It has been consistently
recognized by the Court, both before and after **Almanza**, that extraneous
offenses are inherently prejudicial, and hence harmful to a defendant.
See **Sattiewhite**, 786 S.W. 2nd at 285.  However, this harm may be abated
with a proper limiting instruction.  See **Id.**  See also **Robinson**, 701
S.W. 2nd at 899.

Where, as in Saldivar, an error has been committed at trial,
and the error is harmful, "harm analysis" necessarily requires the
reviewing court to determine whether the harm from the error was somehow
abated.  See **Arline**, 721 S.W. 2nd at 351-352.  If it is not abated,
as it was not done in Saldivar, harm **should** be presumed.  Where no

82

requested instruction is given, it cannot be presumed that the jury properly considered the evidence at trial. Thus, in Saldivar, it cannot be concluded the jury properly considered the extraneous offenses. Moreover, the State's references to the extraneous offenses during closing argument clearly did not abate the prejudice resulting from their unlimited admission. (See infra for a further discussion in Ground of Review No. 5). Such references were partisan comments, rather than an unbiased instructions, and merely drew attention to Applicant's alleged other offenses in addition to the one for which she was charged. See **Williams**, 547 S.W. 2nd at 20.

In **Self v. State**, 860 S.W. 2nd 261, 264 (Tex.App.-Fort Worth, 1993, pet. ref'd), the appellant had requested notice three weeks before trial. See **Id.** at 263. The court found five days' notice adequate where defense counsel was able to cross examine the witness about the specifics of the extraneous offense, noting that the defendant was not surprised by the extraneous offense testimony. **Id.** at 264. While lack of surprise is a valid consideration, the Court in **Self** did state that they did not believe notice is deemed reasonable merely because the defense attorney, by skill or luck, is able to locate and interview the undisclosed witness on short notice or manages to track down reliable information in some other way. In Saldivar, the defense counsel never received notice, in fact it received notice of intention not to use the specific extraneous offense evidence and never had any indication until the issues were elicited at trial.

The United States Supreme Court has instructed that courts should not try to put the question of whether a substantial right has

83

been affected in terms of burden of proof.  See **O'Neal v. McAninch**, 513 U.S. 432, 435, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).  Rather, the question each judge should ask is, "Do I, the judge, think that the error substantially influenced the jury's decision?"  **Id.**  The reviewing court should apply a legal standard harmlessness and not enforce a control mechanism for the presentation of evidence at trial. **Webb v. State**, 36 S.W. 3rd 164, 181 (Tex.App.--Houston [14th Dist] 2000) citing **O'Neal**.  Two other intermediate appellate courts have found that neither party has the burden of proof to show the error violates a substantial right and that the reviewing court should instead look to the entire record in ascertaining the effect of the error. See **Umoja v. Texas,** 965 S.W. 2nd 3, 12 (Tex.App.--Fort Worth 1997, no pet.)(Op. on reh'g); **Fowler v. State**, 958 S.W. 2nd 853, 866 (Tex.App. Waco 1997), aff'd, 991 S.W. 2nd 258 (Tx.Cr.App. [en banc] 1999).  But see **Merritt v. State**, 982 S.W. 2nd 634 (Tex./App. Houston [1st Dist] 1998, pet. ref'd, untimely filed) and at 637 (finding that the defendant has the burden of proof).  The Court in **Webb** concluded that neither party has the burden of proof under Rule 44.2(b) and that review will be to look to the record instead.  **Webb** then discussed how and if a substantial right was violated.  In making this determination, the Court looked for guidance to federal authority applying the federal counterpart to Rule 44.2(b), in addition to considering how Texas state courts apply Rule 44.2(b).

A substantial right is violated when the error made the subject of the Applicant's complaint had a substantial and injurious effect or influence in determining the jury's verdict.  **Webb**, 36 S.W. 3rd 182

citing **King v. Texas**, 953 S.W. 2nd 266, 271 (Tx.Cr.App. 1997) citing **Kotteakos v. U.S.**, 328 U.S. 750, 776, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). If the error had no influence or only a slight influence on the verdict, it is harmless. See **Johnson v. State**, 967 S.W. 2nd 410, 417 (Tx.Cr.App. 1998). However, if the reviewing court harbors "grave doubts" that an error did not affect the outcome, that court must treat the error as if it did. **United States v. Lane**, 474 U.S. 438, 449, 106 S.Ct. 725, 88 L.Ed. 2nd 814 (1986). The United States Supreme Court has defined "grave doubts" to mean "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." **Webb** citing **O'Neal**, 513 U.S. at 435, 115 S.Ct. 992. If the reviewing court is unsure whether the error affected the outcome, the court should treat the error as harmful, i.e., as having a substantial and injurious effect or influence in determining the jury's verdict. See **Carranza v. State**, 980 S.W. 2nd 653, 657 (Tx. Cr.App. 1998).

In **Berry v. State**, 766 S.W. 2nd 367 (Tex.App.--Dallas, 1989), it was held that the admission of evidence that the defendant had committed other robberies was not harmless beyond a reasonable doubt. Prior to trial, the State had represented that it did not intend to introduce any such evidence. Neither party requested the court to give a limiting instruction, and the court did not do so. Extraneous evidence was subsequently testified to. **Id.** at 369. The State in **Berry** urged that any error in admitting evidence of extraneous robberies was harmless due to the overwhelming evidence of **Berry's** guilt. In addressing this argument, the Court of Criminal Appeals was mindful

that it must reverse the trial court's judgment unless it determines beyond a reasonable doubt that the error in admitting evidence of the other robberies made no contribution to **Berry's** conviction. The test is not whether the State could have obtained a conviction <u>without such evidence,</u> but whether there is a reasonable possibility that such evidence might have <u>contributed</u> to **Berry's** conviction. See **Maynard v. State**, 685 S.W. 2nd 60, 67 (Tx.Cr.App. [en banc] 1985). In **Berry**, as was the case in Saldivar, it is clear that both were concerned about possible evidence of extraneous conduct as demonstrated by the pretrial motions filed. Given the possibility of the jury inferring some guilt of the main offense by the lack of guidance concerning the extraneous offense evidence, it cannot be determined beyond a reasonable doubt that this evidence did not, to some small degree, contribute to the jury's guilty verdict.

In **Hayden v. Texas**, 13 S.W. 3rd 69 (Tex.App.--Texarkana, 2000), it was held that the evidence was legally and factually sufficient, but the case was reversed and remanded because the court erred in admitting the extraneous offenses. The State contended that these incidents are same transaction contextual evidence and therefore did not constitute extraneous offenses. Same transaction contextual evidence refers to other offenses that are so connected with the primary offense that they are essential to the State's logical presentment of the evidence regarding the charged offense. See **Rogers v. Texas**, 853 S.W. 2nd 29, 33 (Tx.Cr.App. 1993). In other words, the facts and circumstances of the charged offense would make little or no sense if the other offenses were not disclosed, and in narrating one it is

necessarily impracticable to avoid describing the other. See **Id.**;
**Heiman v. State**, 923 S.W. 2nd 622, 625 (Tex.App.--Houston [1st Dist.]
1995, pet. ref'd).  The notice requirements in Rule 404(b) do not
apply to same transaction contextual evidence.  See **Hodge v. State**,
940 S.W. 2nd 316, 319 (Tex.App.-Eastland 1997, pet. ref'd).  In
**Hayden**, as was also the case in Saldivar, none of the extraneous
offenses shown were necessary to the jury's understanding of the
indicted offense; the facts and circumstances of the primary offense
could have been presented clearly without revealing the other occurrences.
Here, as in Saldivar, it is not disputed that **Hayden** properly requested
notice of the State's intent to introduce any extraneous offenses during
trial.  The dispute was over whether the State gave reasonable notice
in response to **Hayden's** request.  **Hayden** contends that a specific response
to his Rule 404(b) request was necessary, and that instead of specific
notice, the State merely provided the name of "K.S." as a witness.
**Hayden** argued that this was insufficient notice because it did not
adequately apprise him of the extraenous offenses the State planned
to introduce at trial.  In Saldivar, the State promised that certain
extraneous offense evidence would not be elicited from any witness.
The defense counsel never opened the door.  There is no dispute as to
this fact.  There would be no way for the defense to have prepared
against this type of subterfuge perpetrated by the State.

        This focus on the State's "intent to introduce" makes certain
the defendant is apprised, not only of what the State knows, but also
what it intends to introduce at trial.  Having failed to give even
general notice of this intent, these extraneous offenses should have

been excluded.  The Applicant contends that it would be impossible to find that the error in the admission of this evidence did not affect her substantial rights.  A substantial right is affected "when the error had a substantial and injurious effect or influence in determining the jury's verdict."  **King**, 953 S.W. 2d 271, citing **Kotteakos**, 328 U.S. 750, 776, 66 S.Ct. 1239.

In **Neuman v. State**, 951 S.W. 2nd 938 (Tex.App.--Austin 1997), it was held that the State did not give the defendant reasonable notice of its intent to introduce extraneous evidence.  Along with the **Buchanan** line of cases, **Buchanan v. State**, 911 S.W. 2nd 11 (Tx.Cr.App. 1995), **Neuman** held that the mere opening of the State's file to a defense counsel does not constitute reasonable notice.  By the same token, how can it be reasonable notice when the State represents that it intends <u>not</u> to introduce certain evidence, as was the case in Saldivar.

If the trial court properly admits the evidence in light of the factors set forth in **Montgomery**, 810 S.W. 2nd 372, and the court's decision to admit the evidence is "within the zone of reasonable disagreement," the trial court's decision will be upheld.  **Rankin v. State**, 974 S.W. 2nd 707, 718 (Tx.Cr.App. 1996) overruled in part on reconsideration in **Rankin v. State**, 995 S.W. 2nd 210 (Tex.App.--Houston [14th Dist.] 1999).  Reading Rule 404(b) in conjunction with Rules 401 and 402, if evidence is introduced for a purpose other than character conformity or has relevance to a "fact of consequence" in the case, and remains free of any other constitutional or statutory prohibitions, it is admissible.  **Id.**  An evidentiary fact that stands unconnected to an elemental fact is not "a fact of consequence."  **Id.**

A court that sets forth the relevancy of evidence to an evidentiary fact but does not, in some way, draw the inference to an elemental fact has failed to show how the evidence makes a fact of consequence in the case more or less likely and has thus failed to complete its inquiry. **Id.**

It appears from the Saldivar record that the State's erroneous argument that these were somehow not extraneous offenses was simply a vehicle to attack Applicant's character with repetitive distasteful extraneous conduct. The State should not be allowed to bombard the jury with multiple witnesses testifying to unproved extraneous offenses to show Applicant's bad character and that, in committing the offense against the complainant, she was acting in some sort of conformity with this character defect. Generally, the State relies upon **Waddell v. State**, 873 S.W. 2nd 130 (Tex.App.-Beaumont 1994, pet ref'd) for the proposition that the extraneous evidence was admissible because of the damage done to the State's case on cross examination. This certainly does not apply to Saldivar as the defense was completely denied access to the documentation that would have provided them with adequate cross-examination, remembering that the State represented that this testimony would not be elicited. Also, without the legal requested instructions, what was the jury going to do with this evidence except infer it against the Applicant? **Schutz v. Texas**, 957 S.W. 2nd 52, 72 (Tx.Cr.App. 1997).

In the final analysis, it must be remembered that the extraneous offenses pertaining to acts involving other individuals provided <u>no assistance</u> to the jury in making the determination of Applicant's guilt of the crime charged. Because it cannot be said "with fair assurance,

after pondering all that happened without stripping the erroneous action from the whole, that the judgment and sentence were not substantially swayed by the error," **Fowler v. State**, 958 S.W. 2nd 853, 865 (Tex.App.-Waco 1997), affirmed 991 S.W. 2nd 258 (Tx.Cr.App. 1999), the case must be reversed and remanded back to the trial court.

Ground of Review No. 5

The appellate court unreasonably applied clearly established Federal Law in holding that the prosecutor's comments did not amount to an impermissible comment on the Applicant's failure to testify, in violation of the Applicant's rights under the Fifth Amendment of the United States Constitution.

Facts Pertaining to Ground of Review No. 5

During the Prosecution's closing arguments at the Guilt/Innocence phase, the following occurred:

Mr. Skurka: ...Mr. Quintanilla suspected her of a lot of things and confronted her with it in front of Selena and in front of Suzette. What's happened? What's happened? She was never able to give a satisfactory explanation, she could never explain why these people that sent in their money hadn't gotten anything.

Mr. Tinker: Your Honor, that's a comment on my client's failure to testify. I object to it.

The Court: Overruled.

Mr. Tinker: He's calling on her to explain, and I object to it.

The Court: Overruled.

(Appellant's brief, p. 47; R.R. Arguments of Counsel - Trial,

v. XIX of XXVIII, p. 2984).

Moments later, referring to the rape of Applicant in Mexico prior to

the shooting, the prosecution made the following argument:

Mr. Skurka: And again, you've got a registered nurse [Applicant]

here, folks, somebody that knows about reporting this kind

of stuff and documenting this evidence and everything. How

come she doesn't do that? How come she drives her sister

back to San Antonio and then comes back to Corpus and never

reports it?

Mr. Tinker: Your Honor - Excuse me. He's commenting on my

client's failure to testify. He's asking these questions

so that she can't respond to it. I object to it, and I request

the jury to disregard.

The Court: Overruled.

(R.R. Arguments of Counsel - Trial -v, XIX of XXVIII, p. 3006).

Shortly, in attacking Defense Counsel's closing argument, the Prosecution

noted:

Mr. Valdez: You know why he said things like that? ...To take

your mind off the real issue in this case, take your mind

off the real person who's at fault, right there. The one

who stands up defiantly every time they point to her, she

stands up defiantly. She doesn't say anything but she looks

at you and she very defiant to everybody who points at her,

that's the one who responsible and she's guilty.

(R.R. Arguments of Counsel - Trial, v. XIX of XXVIII, p. 3035).

91

Momentarily, the State replayed the theme:

> Mr. Valdez:  What kind of evidence is there that this was
>
> an accident?  When you think about it, there isn't any.  There
>
> is no evidence.  The only evidence so far are the tapes, and
>
> on the tapes the defendant says she didn't intend to do it,
>
> that the gun went off accidentally.  That's the evidence.
>
> Mr. Valdez:  Now, if that proved that a shooting was an accident,
>
> we'd never have any murder prosecutions.  Never.  If anybody
>
> who shot somebody else just had to come in and say it was
>
> an accident and that proved it, we couldn't prosecute anybody.
>
> That's the only evidence that we have besides the Ranger who
>
> says he heard her say that the gun went off.  Once again-,
>
> Mr. Tinker:  Your Honor, again, he's commenting about that's
>
> the only evidence we have.  We're not required to present
>
> any evidence.  A comment like that is a comment on my client's
>
> failure to testify.
>
> The Court:  I sustain the objection.
>
> Mr. Tinker:  Your Honor, I request the jury be instructed
>
> to disregard.
>
> The Court:  As to that portion, yes.
>
> Mr. Tinker:  And I would request a mistrial.
>
> The Court:  Overruled.
>
> (Appellant's brief, p. 48; R.R. Arguments of Counsel - Trial

- v. XIX of XXVIII, pp. 3039-3040).

The Fourteenth Court of Appeals determined that none of the
foregoing was an improper comment on a defendant's failure to testify.

<u>Saldivar</u>, 980 S.W. 2nd at 502.

ARGUMENTS AND AUTHORITIES

<u>Failure to Testify - Legal Background</u>

Neither the trial judge nor the prosecutor can comment on the failure of an accused to testify.  Such a comment <u>violates the privilege against self-incrimination and the freedom from being compelled to testify contained in the Fifth Amendment of the United States Constitution and Article I, 10, of the Texas Constitution.</u>  Just as it is improper for the State to argue from a defendant's silence, it is also improper for the trial judge to call attention to a defendant's silence.  As the United States Supreme Court has stated,

> "What the jury may infer given no help from the court is one thing.  What it may infer when the court so solemnizes the silence of the accused into evidence against himself is quite another."  <u>**Griffin v. California**</u>, 380 U.S. 609, 614, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); <u>**Good v. State**</u>, 723 S.W. 2nd 734 (Tx.Cr.App. En banc 1986) citing <u>**United States v. Wright**</u>, 489 F.2d 1181, 1186 (D.C. Cir. 1973).

Prosecutorial comments on a defendant's failure to testify violate both the state and federal constitutions and Article 38.08 of the Texas Code of Criminal Procedure.  See <u>**Bustamante v. State**</u>, 48 S.W. 3d 761, 765 (Tex.Crim.App. 2001).  To violate the right against self-incrimination, the offending language must be viewed from the jury's standpoint and the implication that the comment referred to the defendant's failure to testify must be clear.  It is not sufficient that the language might be construed as an implied or indirect allusion.

93

The test is whether the language used was manifestly intended or was of such a character that the jury would necessarily and naturally take it as a comment on the defendant's failure to testify. In applying this standard, the context in which the comment was made must be analyzed to determine whether the language used was of such character. The United States Court of Appeals for the Fifth Circuit also considers timing as a factor and does not discount comments simply because they occur before the close of evidence. In **Davis v. United States**, 357 F.2d 438, 441 (Fifth Cir.,) cert. denied, 385 U.S. 927, 17 L.Ed.2d 210, 87 S.Ct. 284 (1996), cert. denied 500 U.S. 934, 114 L.Ed. 2d 463, 111 S.Ct. 2055 (1991), the trial judge, during cross-examination, also commented that defense counsel could overcome an evidentiary problem by putting the defendants on the stand. The judge said several times that the defense could "have your people....testify if you want them to" and "[b]ring them up here and put them under oath." There was no indication that there was an objection or instruction to disregard. The Fifth Circuit reversed and remanded, holding that the comments invited the jury's attention to the fact that the defendants had not testified. **Bustamante**, 48 S.W. 3rd 765.

A defendant's Fifth Amendment right to remain silent is well established. A prosecutor is prohibited from commenting directly or indirectly on a defendant's failure to testify or produce evidence. See **Griffin v. California**, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229 (1965); see also **United States v. Montoya-Ortiz**, 7 F.3d 1171 (Fifth Cir. 1993)(holding that the Constitution prohibits "direct and indirect

references of a defendant's silence."

Comment on the refusal to testify is a remnant of the "inquisitional system of criminal justice," **Murphy v. Waterfront Commission**, 378 U.S. 52, 55, which the Fifth Amendment outlaws.  It is a penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly.  **Griffin v. California**, 380 U.S. 609, 14 L.Ed.2d 106, 85 S.Ct. 1229 (1965).

The privilege against self-incrimination "registers an important advance in the development of our liberty-'one of the great landmark's in man's struggle to make himself civilized.'" **Ullmann v. United States**, 350 U.S. 422, 426, 76 S.Ct. 497, 100 L.Ed. 511 (1956). It reflects many of our fundamental values and most notable aspirations: our unwillingness to subject those suspected of crime to the cruel trilemma of self-accusation, perjury or contempt.  Our preference for an accusatorial rather than an inquisitorial system of criminal justice; our fear that self-incriminating statements will be elicited by inhumane treatment and abuses; our sense of fair play which dictates "a fair state-individual balance by requiring the government to leave the individual alone until good cause is shown for disturbing him and by requiring the government in its contest with the individual to shoulder the entire load." **Murphy v. Waterfront Commission of New York Harbor**, 378 U.S. 52, 84 S.Ct. 1594, 12 L.Ed. 2d 678 (1964).

The test for determining if a Constitutional violation has occurred is whether 'the language used was manifestly intended or was of such character that the jury would naturally and necessarily take it to be a comment on the failure of the accused to testify.  **United**

**States v. Rocha**, 916 F.2d 219, 232 (Fifth Cir. 1990)(quoting **Davis**, 357 F.2d 438, 441 (Fifth Cir.); **Jackson v. Johnson**, 194 F.3d 641, 652 (Fifth Cir. 1999)(citing **United States v. Grosz**, 76 F.3d 1318, 1326 (Fifth Cir. 1996).

"The prosecutor's intent is not manifest if there is some other equally plausible explanation for the remark." **Grosz**, 76 F.3d at 1326. As for whether a jury would naturally and necessarily construe a remark as a comment on the defendant's failure to testify, the question is not whether the jury possibly or even probably would view the challenged remark in this manner, but whether the jury necessarily would have done so. **Id.** (quoting **United States v. Collins**, 972 F.2d 1385, 1406 (Fifth Cir. 1992)(quoting **United States v. Carrodeguas**, 747 F.2d 1390, 1395 (Eleventh Cir. 1984)). Additionally, challenged comments are evaluated in the context of the trial within which they are made. **United States v. Robinson**, 485 U.S. 25, 33, 99 L.Ed.2d 23, 108 S.Ct. 864 (1988).

The prosecutor's questioning regarding Saldivar's failure to provide an explanation for the extraneous offenses was completely improper, not only because it was an improper comment, but it drew even more attention to the improperly instructed extraneous offenses. The trial court's failure to instruct the jury as to one of the instances where Applicant alone could explain an extraneous offense constitutes error. It was prejudicial to Saldivar as well because it allows the jury to infer that the defense that was put forth was less credible because the Applicant failed to take the stand to explain. See **De Los Santos v. State**, 918 S.W. 2d 565 (Tex.App.-San Antonio, 1996) holding that the prosecutor's summation argument during the penalty

phase improperly referred to the defendant's failure to testify, and the error was not harmless.  The conviction was reversed when it was determined that his right to due process was violated when the trial court permitted the prosecutor to argue to the jury that it should infer guilt from the election to remain silent after his arrest and receipt of Miranda warnings.

Conclusion

Credibility was crucial to the jury in Saldivar's trial. Because there were no witnesses to the crime, the jury ultimately had to decide whose version of the facts it believed more:  the complainant's, or Saldivar's.  The prosecutor's comments regarding Applicant's failure to testify served to inflame the jury against Applicant, and struck at her credibility in an unconstitutional way.

The State is the source of the error relating to the admission of Applicant's failure to testify. The prosecution's comments upon Saldivar's failure to testify was an unconstitutional infringement of Saldivar's rights, and amounted to incurable error because of the highly prejudicial effect it had on the jury, and the impact it had on the verdict.  Thus, Applicant asserts that the error resulted in an unconstitutional infringement upon her fundamental due process right to a fair trial under the Sixth and Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Texas Constitution.

Ground of Review No. 6

The appellate court unreasonably applied clearly established Federal Law in affirming the trial court's denial of the requested punishment instruction of sudden passion, pursuant to Texas Penal Code,

Title 5, Chapter 19.02 (2) and Chapter 19.02(d), in violation of the
Sixth and Fourteenth Amendments of the United States Constitution.

<u>Facts Pertaining to Groun of Revie No. 6</u>

        The Fourteenth Court of Appeals erroneously opined that
Applicant was not entitled to a jury instruction on the issue of sudden
passion from adequate cause based upon her written statement.  This may
well be true as far as that goes, however, there was certainly a plethora
of other testimony elicited from other witnesses that related to the
argument that compalinant and Applicant were having at the time of the
incident, the previous arguments and threats of charges that had been
waged against Applicant by all members of complainant's family immediately
prior to the incident, and testimony from a police officer that the
Applicant had informed him that the gun went off when Applicant was
waiving the weapon around in an argument with compalinant.  The Fourteenth
Court of Appeals, by their opinion would seem to be wrongfully asserting
the state of the law to be that any evidnece of sudden passion must come
from the person asserting the defense.  This could not be more wrong.

        Mr. Valdez:  What kind of evidence is there that this was
        an accident?  When you think about it, there isn't any.  There is
        no evidence.  The only evidence so far are the tapes, and on the
        tapes the defendant says she didn't intend to do it, that the gun
        went off accidentally.  That's the evidence.

        Mr. Valdez:  Now, if that proved that a shooting was an accident,
        we'd never have any murder prosecutions.  Never.  If anybody who
        shot somebody else just had to come in and say it was an accident
        and that proved it, we couldn't prosecute anybody.  That's the

only evidence that we have besides the Ranger who says he heard her say that the gun went off. (Appellant's brief, p. 48; R.R. Arguments of Counsel - Trial - v. XIX of XXVIII, pp. 3039-3040).

The Fourteenth Court stated: "...Murder statement did not raise issue of sudden passion arising from adequate cause, and thus, defendant was not entitled to jury charge regarding sudden passion; although statement showed victim provoked defendant's anger by telling her that victim's father accused defendant of embezzlement and sexual deviance, it did not reflect evidence of extreme emotional and psychological state defining sudden passion of adequate cause." **Saldivar**, 980 S.W. 2nd 505.

When taken into consideration that the jury was inundated with evidence of the alleged embezzlement and sexual deviance, how could the trial court and subsequently the court of appeals justify the denying of this charge? The governmental authorities truly had their cake and got to eat it too. In essence, the court told the jury to take all of this damaging evidence against Applicant, do with it what they will with no guidance, as long as it gets them to a murder conviction.

<u>ARGUMENTS AND AUTHORITIES</u>

The Applicant's claim here, that the State court erred in denying a jury charge on the issue of sudden passion, is cognizable in an application for relief in this Federal Court, because the State of Texas guarantees the accused the right to have the jury assess punishment, and this creates a due process issue:

"Where, however, a State has provided for the imposilton **of**

criminal punishment in the discretion of the trial jury, it
is not correct to say that the defendant's interest in the
exercise of that discretion is merely a matter of state
procedural law.  The defendant in such a case has a substantial
and legitimate expectation that he will be deprived of his
liberty only to the extent determined by the jury in the
exercise of its statutory discretion, cf. **Greenholtz v.
Nebraska Penal Inmates**, 422 U.S. 1, and that liberty interest
is one that the Fourteenth Amendment preserves against arbitrary
deprivation by the State.  See **Vitek v. Jones**, 445 U.S. 480,
488-89, citing **Wolff v. McDonnell**, 418 U.S. 539; **Greenholtz
v. Nebraska Penal Inmates**, supra; **Morrissey v. Brewer**, 408
U.S. 471, See **Hicks v. Oklahoma**, 447 U.S. 343.

Under Texas law, at the punishment phase of the trial for
intentional murder, an accused may raise the issue as to whether he
caused the death under the immediate influence of sudden passion arising
from an adequate cause.  If the accused proves the issue in the affirmative
by a preponderance of the evidence, the offense is a felony of the second
degree and subject to a punishment range of two to twenty years rather
than five to ninety-nine or life, which is the range of punishment for
a first degree felony.  See Tx.Pen.Code Ann §§ 19.02(d), 12.32, 12.33.

Thus, sudden passion is a mitigating circumstance at the
punishment phase of a murder trial.  The Texas penal code defines adequate
cause as "cause that would commonly produce a degree of anger, rage,
resentment, or terror in a person of ordinary temper, sufficient to
render the mind incapable of cool reflection."  Texas Penal Code

§ 19.02(a)(1).  The code defines sudden passion as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." Texas Penal Code §19.02(a)(2)[emphasis added].  See **Perez v. State**, 940 S.W. 2nd 820, 822 (Tx.App.-Waco 1997, no pet.); **Willis v. State**, 936 S.W. 2nd 302, 308 n. 1 (Tex.App.-Tyler 1996, pet. ref'd); **Merchant v. State**, 810 S.W. 2nd 305, 308 (Tex.App.-Dallas, 1991 [pet.ref'd]) citing **Daniels v. State**, 645 S.W. 2nd 459, 460 (Tx.Cr.App. [en banc] 1983); **Act of May 24, 1973**, 63d Leg., R.S., ch. 399 § 1, 1973 Tx.Gen. Laws 883, 913 (Subsequent amendments omitted)(formerly Tx.Pen.Code Ann. § 19.04), repealed by, **Act of May 29, 1993**, 73rd Leg., R.S., ch. 900, S 1.10, 1993 Tx.Gen.Laws 3586, 3614 (current version at Tx.Pen. Code Ann § 19.02 (Vernon 1994).

When the accused has the burden of proof by a preponderance of the evidence on a fact issue, the standard of review is whether, after considering all the evidence relevant to the issue, "the judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust." **Meraz v. State**, 785 S.W. 2nd 146, 154 55 (Tx.Cr.App. 1990)(en banc); **Guerra v. State**, 936 S.W. 2nd 46, 48 (Tx.App.-San Antonio 1996, pet. ref'd).  The Texas courts of appeals have upheld the constitutionality of the procedure under section 19.02(d). See **Jones v. Texas**, 955 S.W. 2nd 438 (Tex.App.-Fort Worth, 1997); **Robinson v. Texas**, 945 S.W. 2nd 336, 342 (Tx.App.-Austin 1997, pet. ref'd); **Kreysig v. State**, 935 S.W. 2nd 886, 891 (Tex.App.-Texarkana 1996, pet. ref'd).

In trials held before September 1, 1994, the issue of sudden passion arising from an adequate cause related to the issue of guilt rather than punishment. See **Rainey v. State**, 949 S.W. 2nd 537, 541 (Tex.App.-Austin 1997, pet.ref'd). When the evidence raised the issue, it became an element of the offense the State was required to disprove beyond a reasonable doubt during the guilt innocence state of the trial. **Id.** One who caused another's death under the influence of sudden passion arising from an adequate cause was guilty of the separate crime of voluntary manslaughter. **Id.** Voluntary manslaughter is no longer a separate crime. **Id.** See also **Roberts v. Texas**, 590 S.W. 2nd 498, 501 (Tx.Cr.App. 1979); **McCartney v. State**, 542 S.W. 2nd 156, 160 (Tx. Cr.App. 1976); **Perez**, 940 S.W. 2nd at 822.

In Saldivar there was a plethora of testimony about the continuing problems between Saldivar and the Quintanillas, but that notwithstanding, there was considerable testimony about the level of anger of all involved immediately preceding the incident. As a general rule, it is within the province of the jury as fact finder and judge of the credibility of the evidence to decide whether a defendant's actions are reasonable under the circumstances. **Brazelton v. State**, 974 S.W. 2d 644, 649 (Tx. App.-Fort Worth, 1997) citing **Graham v. State**, 566 S.W. 2nd 941, 952 n.3 (Tx.Cr.App. 1978).

For the Court to correctly deny a defensive charge to be submitted to the jury there must be undisputed facts demonstrating a complete absence of evidence of sudden passion. V.T.C.A. Penal Code §19.02(a)(2) and §19.02(d). The burden of proof is upon the defendant in trial at the punishment phase to prove by a preponderance of the

evidence that the actor was under the immediate influence of sudden

passion arising from an adequate cause. See **Moseley v. Texas**, 931 S.W.

2nd 670 (Tex.App.-Houston [1st Dist.] 1997 pet.ref'd); See also

**Williams**, 662 S.W. 2nd 346. The State argues and the Court of Appeals

agreed, that there was insufficient evidence for this to be submitted

to the jury. Considering the law requires a complete absence of evidence,

Applicant argues that this argument invades the province of the jury.

The jury is judge of the weight and credibility to be given to all

evidence. The State and the trial court are not to act as the

thirteenth juror. On review, this evidence is viewed in the light most

favorable to the requested defensive instruction. **Brazelton**, 974 S.W.

2nd at 649 citing **Sanders v. State**, 707 S.W. 2nd 78, 79-90 (Tx.Cr.App.

1986)(overruled by **Willis v. State**, 790 S.W. 2nd 307 (Tx.Cr.App. 1990)).

When the issue of sudden passion is presented, it is incumbent on the

trial court to charge the jury fully and affirmatively as to the law

applicable thereto, whether the evidence raising such issue be strong

or weak, unimpeached or contradicted. **Thomas**, 662 S.W. 2nd at 680

citing **Williams v. State**, 630 S.W. 2nd at 643; **Woods**, 121 S.W. 2nd

604 (emphasis added).

       The argument is further supported by the fact that the Texas

Constitution guarantees accused individuals the right to trial by jury.

See Tex.Const. Art. I §15. Error occurs when the judge fails to submit

a charge on a defensive issue if the accused presents affirmative evidence

that would constitute a defense to the crime charged.

Texas Penal Code - 19.02. Murder

       (a) In this section:

(1) "Adequate cause" means cause that would commonly produce

a degree of anger, rage, resentment, or terror in a person

of ordinary temper, sufficient to render the mind incapable

of cool reflection.

(2) "Sudden passion" means passion directly caused by and

arising out of provocation by the individual killed or

another acting with the person killed which passion arises

at the time of the offense and is not solely the result

of former provocation.

(b) A person commits an offense if he:

(1) intentionally or knowingly causes the death of an individual;

(2) intends to cause serious bodily injury and commits an

act clearly dangerous to human life that causes the death

of an individual; or

(3) commits or attempts to commit a felony, other than

manslaughter, and in the course of and in furtherance

of the commission or attempt, or in immediate flight from

the commission or attempt, he commits or attempts to

commit an act clearly dangerous to human life that causes

the death of an individual.

(c) Except as provided by Subsection (d), an offense under

this section is a felony of the first degree.

(d) At the punishment stage of a trial, the defendant may

raise the issue as to whether he caused the death under

the immediate influence of sudden passion arising from

an adequate cause.  If the defendant proves the issue

in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

In **Mims v. State**, 3 S.W. 3rd 923 (Tx.Cr.App. 1999), it was held among other things that if sudden passion was raised by the evidence, the sudden passion issue should be submitted in the punishment phase of an attempted murder prosecution. For cases discussing a defendant's entitlement to a jury instruction on sudden passion (and that were tried shortly before the new Penal Code became effective), see **Ray v. State**, 515 S.W. 2nd 664 (Tx.Cr.App. 1974) and **Bryant v. State**, 482 S.W. 2nd 270 (Tx.Cr.App. 1972); **Mims**, 3 S.W. 3rd at 927.

The Court in **Mims** stated that courts should be especially reluctant to change a longstanding interpretation of the law on what is, at best, an ambiguous textual basis, when there appear to be other, more obvious explanations for the statutory change. Two more obvious intended effects of the legislative change here are: (1) to shift the burden of proof on the sudden passion issue to the defendant, and (2) to turn the issue into a punishment phase issue, thereby minimizing the effects of reversible error that might occur in connection with the issue. And in fact, these purposes tend to go hand in hand. While affirmative defenses have been phrased by the Legislature in the modern penal code as guilt phase issues, mitigating factors upon which the defendant has the burden of proof, where such factors actually decrease the grade of the offense if proven, have nearly always been phrased as punishment issues. **Mims**, 3 S.W. 3rd at 927. It should be noted that no where in the case law does it state that for a defense of sudden passion to be achieved, the defendant must take the stand. The evidence

requiring the jury charge on sudden passion can come from any source.
**McIntosh v. State**, 855 S.W. 2nd 753 (Tex.App.--Dallas, 1993).

If the defendant produces evidence raising each element of
the requested defensive instruction, he is entitled to said instruction
regardless of the source and strength of evidence. **Id.** at 646. See
also **Miller v. State**, 815 S.W. 2nd 582, 585 (Tx.Cr.App. 1991). This
evidence, unlike challenges to the sufficiency of the evidence, are
reviewed in the light most favorable to the defense. **Brazelton**, 974
S.W. 2nd at 646. Bearing repeating - An accused is entitled to an
instruction on every defensive issue raised by the evidence, regardless
of whether that evidence is "strong, weak, contradicted, unimpeached,
or unbelievable." **Muniz v. State**, 851 S.W. 2nd 238, 254 (Tx.Cr.App.),
cert. denied, 510 U.S. 837, 114 S.Ct. 116, 126 L.Ed. 2nd 82 (1993);
**Perez**,940 S.W. 2nd 822; **Fry v. State**, 915 S.W. 2nd 554, 558 (Tex.App.
--Houston [14th Dist.] 1995, no pet.). Though the testimony can come
from any source it has even been ruled that the testimony of the
defendant alone can raise this issue. See **Medlock v. State**, 591 S.W.
2nd 485, 486 (Tx.Cr.App. 1979) which would seem to fly in the face of
the self serving doctrine. That is how important jury instruction have
been deemed to be.

Evidence of both sudden passion and adequate cause is necessary
to justify the submission of the mitigating factor. Certainly, in
Saldivar, there was certainly more testimony than was legally required
as to these two issues. Applicant was being badgered on almost a daily
basis with accusations that would have made her potentially susceptible
to criminal charges-something that was never required by the trial court

to be proven.  A charge on "sudden passion" is properly refused when there is no evidence of adequate cause.  See **Marras v. State**, 741 S.W. 2nd 395, 405 (Tx.Cr.App. 1987), overruled on other grounds; **Garrett v. State**, 851 S.W. 2nd 853, 860 (Tx.Cr.App. 1993).  Without legally adequate cause, no amount of subjective passion will justify the submission of the issue.  See **Provost v. State**, 514 S.W. 2nd 269 (Tx. Cr.App. 1974); **Corral v. State**, 900 S.W. 2nd 914, 919 (Tex.App.-- El Paso 1995, no pet.).  The sudden passion must be directly caused by and arising out of provocation by the deceased at the time of the offense. In Saldivar, this is certainly established by the evidence. The Fourteenth Court of Appeals seemed to reason the way it did because it did not believe the Applicant's theory-but that is not the state of the law.  Remembering that it does not matter if we might feel the evidence to be unbelievable, in that, the provocation should not have provoked the response, that is not the state of the law.  See discussion supra.  Although evidence of prior arguments or discord alone will not necessarily establish the needed provocation. See **McIntosh**, 855 S.W. 2nd at 762; see also **Willis**, 936 S.W. 2nd 308 n. 1; **Ybarra v. State**, 890 S.W. 2nd 98, 109 (Tex.App.--San Antonio, 1994, 1995 pet.ref'd.), if the prior arguments were unattenuated so as to constitute a continuing agitation without a "sufficient" period of cooling off, then prior arguments can be used for justifying the needed provocation. The law, however is very clear that "sudden passion" must arise at the time of the offense and not solely be the result of former provocation.  See **Moore v. Texas**, 694 S.W. 2nd 528, 530 (Tx.Cr.App. 1985); **Green v. Texas**, 694 S.W. 2nd 528, 530 (Tx.Cr.App. 1985)(both cases decided

before the change in the law, however provide an analysis as to what
is and is not sufficient provocation.)  It is clear in Saldivar, that
the "sudden passion" was "caused adequately" by the prior, continuing,
and immediate provocations.

      In **Gold v. State**, 736 S.W. 2nd 635, (Tx.Cr.App. 1987), while
not making a determination on what is a sufficient cooling off period,
it was deemed plausible that, even assuming a **loss of composure** during
the deceased's two hour verbal assault, appellant still took the time
to go to the kitchen, look for and find a cord and a knife, and then
return to the bedroom before attacking his wife.  The issue of sudden
passion was submitted to the jury.  The trial court in **Gold** understood
that resolving the question of whether appellant acted with sudden
passion is uniquely the province of the fact finder.  **Gold**, 736 S.W.
2nd at 690 (emphasis added).  So long as there is more than a "mere
modicum" of evidence to support it, the Court concluded the jury
properly found the absence of sudden passion beyond a reasonable doubt.
**Id.**  See also **Jackson v. United States**, 443 U.S. 307, 319, 20 (1979).
In **Gold**, the issue of sudden passion was submitted to the jury and the
issue on review was the burden of proof the jury must utilize in
finding sudden passion existing or not.  The reviewing court decided
that this issue was decided beyond a reasonable doubt.  **Gold** has since
been reversed on other ground - that being the "no evidence" doctrine
denounced in **Jackson** as no longer the operative standard of review.
However, the analysis of sudden passion is still sound reasoning.
**Gold**, 736 S.W. 2nd at 635.  A defendant must show that the "passion"
was "sudden" that it was not earlier events, and nothing more, which

had created the emotional crisis.  See **Oliva v. Texas**, 663 S.W. 2nd
656, 658 (Tex.App.--Corpus Christi 1983, no pet.).  Sudden passion is
an excited and agitated mind at the time of the killing caused by an
act of the deceased.  See **Hobson v. State**, 644 S.W. 2nd 473, 478 (Tx.
Cr.App. 1983).  The case law just reviewed reiterates that the events
leading up the incident are not to be solely considered in the
determination of adequate cause giving rise to the sudden passion.
As Applicant is sure that the time frame surrounding the adequate cause
discussion could be a subject of great debate, nonetheless, the State
chose to put the witnesses on the stand to testify as to the constant
assertions against Applicant of the charges of embezzlement and the
Texas Ranger who testified that Applicant told him of a great heated
argument between complainant and Applicant immediately prior to the
incident, so that any objection to the issue of sudden passion not
being adequately caused or raised by the evidence is formally waived
by the State.

By analogy, the Applicant puts forth the following argument:
In a clearly hypothetical case where a trial court has ruled that
certain extraneous offenses would not be admitted at the guilt/innocence
phase of a trial pursuant to a defense 404(b) request and it is
determined that the defense counsel subsequently erroneously opened
the door to said extraneous offenses, then the State, in most circumstances,
is entitled to go into the details of the extraneous offenses.  This
is despite the previously ruled on probability of prejudice to the
defendant over the extraneous' probative value.  **Moseley**, 931 S.W. 2nd
670; **Williams v. State** 662 S.W. 2nd 344, 346 (Tx.Cr.App. 1984).  The

case law concerning sudden passion holds that the adequate cause
justifying sudden passion must be the events immediately preceding the
death and not solely the events occurring prior to the death.  The
Applicant asserts that the word "solely" allows the jury to view events
preceding the death as long as it is in some way connected to the events
immediately preceding the death.  In the case at bar, the State chose
to put in to the record all of these events.  Additionally, the State
relied upon this testimony in their closing arguments.  Certainly the
analogy of the 404(b) hypothetical is clear - if the State opens a door
to the issue of sudden passion and adequate cause by bringing forth
testimony, how can the trial court and the court of appeals be justified
in denying the submission of these issues to the jury?  Again, the
courts allowed the State to have it both ways - to argue the damaging
portions of the testimony surrounding sudden passion and adequate cause
and then argue that these events indeed did not rise to the level of
justifying the jury instructions.  Applicant urges she was harmed from
the court of appeals failure to overrule the trial court's failure to
charge the jury on the requested charge of sudden passion.  Applicant
urges that error on the requested instruction was preserved and that
she is entitled to reversal due to the presence of harm, regardless
of the degree of harm.  **Brazelton**, 974 S.W. 2nd at 649. See also **Abdnor**,
871 S.W. 2nd 732; see also **Almanza**, 686 S.W. 2nd 171.
There are four factors that are to be considered in assessing whether
harm exists:

     1.  the charge itself;

     2.  the state of the evidence including contested issues and

the weight of the probative evidence;

3.  arguments of counsel;

4.  any other relevant information revealed by the record
    of the trial as a whole.

**Brazelton**, 974 S.W. 2nd at 649-650. See also **Bailey v.**
**State**, 867 S.W. 2nd 42, 43 (Tx.Cr.App. [en banc] 1993).

Applicant objected to the charge.  Applicant preserved this
complaint.  Applicant asserts that she was specifically harmed by the
denial of this charge.  As submitted, the charge required the jury to
assess Applicant's punishment within the range provided for a first
degree felony.  Tx. Penal Code Ann. § 19.02(c).  The range of
punishment for a first degree felony is incarceration for life or for
any term of between five and ninety nine years.  If the requested issue
on sudden passion had been submitted, and if the jury were satisfied
that the Applicant had proven it, the jury would have been required
to assess her punishment within the range provided for a second degree
felony.  Tx.PenalCodeAnn. § 19.02(d).  That range is incarceration for
any term of between two and twenty years.  Tx.PenalCodeAnn. § 12.33(a).
The jury sentenced Applicant to life in prison.  If the jury had found
in Applicant's favor on the sudden passion issue, her maximum punishment
would have been twenty years.  Thus, it cannot be said that the error
did not harm Applicant.  See **Merchant**, 810 S.W. 2nd at 312.  Remembering
that no one is allowed to act as a thirteenth juror, the province of
the jury should not have been invaded, and the court in having done so
egregiously violated Applicant's constitutional rights.  **Clewis v. State**,
876 S.W. 2nd 459 (Tex.App.--Austin, 1995).  Given any number of potential

scenarios the jury could have believed or disbelieved, it cannot be said that the denial of this charge did not lead to a greater sentence. Applicant asserts that the record is replete with examples of the State's vehemence in keeping the instruction on sudden passion from the jury. The jury was denied the option of anything in between.  This argument, however, can become so convoluted as to prove the rule of not invading the province of the jury.

In the recently decided United States Supreme Court case of **Blakeley v. Washington**, ___U.S.___, 124 S.Ct. 2531, 159 L.Ed. 2d 403, 72 U.S.L.W. 4546 (2004), the Supreme Court reaffirmed the valuable right of having the jury determine fact issues on punishment, when findings on those issues would increase the maximum punishment range the defendant would be subjected to.  See also **U.S. v. Booker**, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  The Applicant would argue that, to preserve Applicant's rights under the Sixth and Fourteenth Amendments of the United States Constitution and Article I, Section 15 of the Texas Constitution, the jury must be instructed as to all relevant facts relating to punishment, where the evidence raises the issue.  Not instructing the jury on the issue of sudden passion, where the evidence has raised it, means that the Applicant will face a much higher punishment range-indeed, up to ninety-nine years, or life, rather than a maximum punishment of twenty years.  This, of course, has a significant bearing on the Applicant's liberty, and the trial court's failure to instruct on sudden passion violated Applicant's right to Due Process.

The right to trial by jury has been held precious for as long as we've been organized by the rule of law. "The 'truth of every

accusation' against a defendant 'should afterwards be confirmed by the unanimous suffrage of twelve of his equals and neighbours', 4 W. Blackstone, Commentaries on the Laws of England 343 (1769), and that 'an accusation which lacks any particular fact which the law makes essential to the punishment is...no accusation within the requirements of the common law, and it is no accusation in reason', 1 J. Bishop, Criminal Procedure §87, p. 55 (2d ed. 1872)".

The right to have the jury fully informed in making its determinations is as old as our democracy and held **inviolate**: "Just as suffrage ensures the people's ultimate control in the legislative and executive branches, jury trial is meant to ensure their control in the judiciary. See Letter XV by the Federal Farmer (Jan. 18, 1788), reprinted in 2 The Complete Anti-Federalist, 315, 320 (H. Storing ed. 1981)(describing the jury as 'secur[ing] to the people at large, their just and rightful controul in the judicial department'); John Adams, Diary Entry (Feb. 12, 1771), reprinted in 2 Works of John Adams 252, 253 (C.Adams ed. 1850)('[T]he common people, should have as complete a control...in every judgment of a court of judicature' as in the legislature); Letter from Thomas Jefferson to the Abbe Arnoux (July 19, 1789), reprinted in 15 Papers of Thomas Jefferson, 282, 283 (J.Boyd ed. 1958)('Where I called upon to decide whether the people had best be omitted in the Legislative or Judiciary department, I would say it is better to leave them out of the Legislative.'; **Jones v. United States**, 526 U.S. 227, 244-248, 143 L.Ed.2d 311, 119 S.Ct. 1215 (1999).

It is understood that, under the standards applicable to

federal habeas corpus claims, the Applicant has an extraordinarily
high bar.  The fact that a jury instruction was allegedly incorrect
under state law is not, by itself, a basis for habeas relief.  **Estelle**
**v. McGuire**, 502 U.S. 62, 71-72, 116 L.Ed. 2d 385, 112 S.Ct. 475 (1991).
Rather, the sole question on habeas is "whether the ailing [jury]
instruction by itself so infected the trial that the resulting conviction
violates Due Process."  **Id.** at 72 (quoting **Cupp v. Naughten**, 414 U.S.
141, 147, 38 L.Ed.2d 368, 94 S.Ct. 396 (1973).  Moreover, the Supreme
Court has cautioned that it has 'defined the category of infractions
that violate 'fundamental fairness' very narrowly."  **Dowling v. United**
**States**, 493 U.S. 342, 353, 107 L.Ed. 2d 708, 110 S.Ct. 668 (1990).

Although the bar is admittedly high, Applicant contends that,
in the context of her trial, the jury instruction, lacking in an
instruction on sudden passion, so infected the trial that the result
does, here, violate Due Process.  When viewing the trial as a whole,
the charge was obviously erroneous in its omission of the defensive
issue.  This left the jury with the incorrect perception that there
was no defense available in the law clearly making it more probable
that the Applicant would be punished at a heightened level, i.e.,
significantly more incarceration.  Due to this, Applicant was obviously
and egregiously denied her Sixth and Fourteenth Amendment rights under
the United States Constitution and her Art. I § 10 right under the
Texas Constitution to a fair and impartial trial.  The Fourteenth
Court of Appeals affirming the trial court's error on this issue
represented an unreasonable application of clearly established Federal
Law.

## CONCLUSION AND PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Applicant requests that this Petition be granted.

Respectfully Submitted,

_Yolanda Saldivar_

Yolanda Saldivar
TDC #733126
Lanue Murray Unit
1916 N. Hwy 36 By Pass
Gatesville, Texas  76596

## CERTIFICATE OF SERVICE

I, Yolanda Saldivar, do hereby certify that the foregoing document was filed in the United States District Court, Southern District on the __27__ day of __March__ , 2008.

_Yolanda Saldivar_

Yolanda Saldivar

115

UNSWORN DECLARATION

I  Yolanda Salduar    # 733126    ,BEING PRESENTLY
INCARCERATED IN TDCJ  Lane Murray  UNIT, IN  Coryell
COUNTY, TEXAS, DECLARE UNDER PENALTY OF PERJURY THAT THE FORE-
GOING IS TRUE AND CORRECT.


EXECUTED ON  March 21  ,20 08 .

SIGNATURE  Yolanda Salduar  .


Under both federal law (28 U.S.C. 1746) and state law (V.T.C.A.
Civil Practice & Remedies Code, SS 132.001-132.003), inmates
incarcerated in Texas may use an unsworn declaration under
penalty of perjury in place of a written declaration, verification,
certification, oath or affidavit sworn before a Notary Public.

Document's for which notarization is requested by an attorney,
and documents destined to another state or country requiring
notary public service shall continue to require notary public
service.

Inmates requesting notary public service must explain in their
request why an unsworn declaration will not be sufficient for
the document to proceed.  Otherwise, notary public service
will be denied.

Inmates possessing a document requiring the signatures of other
inmates shall be permitted to obtain such signatures during times
and at places on the unit wherein inmates are permitted to conduct
legal work with each other.  Inmates who cannot get together for
legal work may submit a request for a legal visit under the
provisions of AM 03.81.055, Inmate Legal Visits, during which
time, if the visit is approved, signatures can be obtained.
Inmates on different units, or those denied legal visits, can
use the U.S. Mail.

AVISO
PARA LOS PRESOS

Bajo la ley federal (28 U.S.C. 1746) y la ley estatal (V.T.C.A. Código de Práctica
Civil y Remedios, SS 132.001-132.003), los presos encarcelados en Texas pueden usar
(hacer) una declaración sin juramento bajo pena de perjurio en lugar de una
declaración por escrito, verificación, certificación, juramento o afidávit jurado
ante un Notario Público.

Los documentos para los cuales una notarización es solicitada por un abogado, y
documentos destinados a otro estado o país que requieren el servicio de un notario
público continuaran necesitando el servicio de un notario público.

Los presos que soliciten el servicio de un notario público deben explicar en su
solicitud el por qué una declaración sin juramento no será suficiente para que el
documento pueda continuar.  Si no lo hace, se le negará el servicio del notario
público.

A los presos que tienen un documento que necesita las firmas de otros presos les
será permitido obtener tales firmas durante las horas y en lugares de la unidad
en los cuales se les permite llevar a cabo trabajos jurídicos entre ellos.  Los
presos que no pueden reunirse para hacer trabajos jurídicos pueden someter
una solicitud para una visita legal bajo las provisiones de AM 03.81.055, Visitas
Legales de los Presos, durante este tiempo, si se aprueba la visita, se pueden
obtener las firmas.  Los presos en unidades distintas, o aquéllos a los que se les
ha negado las visitas legales, pueden usar el correo.

CERTIFIED TRANSLATION
NO. TDC 110 B  DATE 5-20-88

# APPENDIX

Z 554 233 716

**US Postal Service**
**Receipt for Certified Mail**
No Insurance Coverage Provided.
Do not use for International Mail (See reverse)

Sent to
Attorney General's

Street & Number
Austin TX 7870

Post Office, State

Postage

Certified Fee

Special Delivery

Restricted Deliv

Return Receipt
Whom & Date
Return Receipt Sh
Date & Addresse

TOTAL Postag

Postmark or D

PS Form 3800, April 1995

---

Z 554 233

**US Postal Service**
**Receipt for Certified Ma**
No Insurance Coverage Provided.
Do not use for International Mail (See reve.

Sent to
214thDist Ct

Street & Number
Nueces Cty Courthouse

Post Office, State, & ZIP Code
CC TX 7840

Postage

Certified Fee

Special Delivery Fee

Restricted Delivery F

Return Receipt Show
Whom & Date Delive
Return Receipt Showing
Date & Address's Ad

TOTAL Postage &F

Postmark or Date

PS Form 3800, April 1995

SAN A
TX
SP 1999

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

attorney Gen's
Office appellate Section
iustin TX 78701

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    IN MAILCENTER
B. Date of Delivery

C. Signature
X    SEP 26 2000    ☐ Agent  ☐ Addressee

D. Is delivery address    ATTORNEY    ☐ Yes
If YES, enter delivery    GENERAL 78701    ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

mber (Copy from service face)
554 233

11, July 1999    Domestic Return Receipt    102595-00-M-0092

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

214th Dist.Ct
Judge Westergren
Clerk of court
Nueces Cty Courthouse
CC TX 78401

**COMPLETE THIS SECTION ON DELIVERY**

A. Received by (Please Print Clearly)    0003  DES 9 8
B. Date of Delivery

C. Signature
X    ☐ Agent  ☐ Addressee

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Copy from service label)
554 233 72

PS Form 3811, July 1999    Domestic Return Receipt    1C2595-99-M-1799