*LAW OFFICE OF SUZANNE KRAMER*
*127 LEWIS STREET*
*SAN ANTONIO, TEXAS*
*(210) 226-2161*
*(210) 226-2201*

April 14, 2005

Alan Manka
901 N.E. Loop 410 #830
San Antonio, Texas 78209

Re: Yolanda Saldivar

Dear Mr. Manka;

I finished the memorandum in support of the 2254 Writ the last week of March into the first week of April. However, I have been in a murder trial and have not gotten this material to you. This was intentional because there are so many procedural pitfalls that can occur with these types of writs that I wanted to sit down with you and explain them all. I informed T.R. of this in our most recent phone conversation. Apparently, he did not communicate this to you. In any event, I thought better of this and decided, at the close of the murder trial I was in, to send this to you with a detailed letter explaining all the procedures involved, so that there would be no question later as to the validity of this explanation.

1. Procedure requires that to urge an issue in a 2254 Federal Writ, it must first have been urged in the 11.07 State writ, otherwise it is waived. Therefore, the 2254 Federal Writ is very similar to the State writ, as required. The differences include that on a 2254 Federal Writ, I am not limited to Texas and U.S.S.C. law. I therefore re-researched all issues amongst not only the 5th circuit but also the other federal circuits for any relevant case law. As you can imagine, this was quite time consuming. Additionally, I went through and rechecked all the citations made within the State Writ. Again, as you might imagine, this was extremely time consuming. Several cases had been reversed. Except for Geesa, which was reversed the month after filing of the State Writ, most of the reversals of the cited State law were not problematic to Yolanda's issues, however, it required changing the language and some of the arguments in the Federal writ to be in compliance with the changes in the law. Additionally, you might want to let Yolanda know that with the advent of Crawford v. Washington and the Blakeley-Booker line of cases, there were issues available to us that were not as early as last year, with Crawford being decided in 2004 and Booker being decided in 2005. Additionally, I needed to go through all the record references and put them in the proper order within the 2254 writ.

2. You will need to file the Writ of Mandamus in the Court of Criminal Appeals. As the State Writ is the issue, I have given you a copy of it to attach within the Appendix of the Mandamus. Please look to the Certificates of Service for all the appropriate people you will need to serve. As your signature is required and Yolanda has indicated, in no uncertain terms, that you are her lead counsel, with my purpose being solely the writer, I did not add my name, and therefore, cannot sign nor file the

documents.

3. The Federal Writ needs to be filed in the Southern District of Texas. Be advised that the Writ that I am giving you is actually the memorandum in support of the writ. The procedure in federal court is the same as it is in State court, i.e. that you will need to fill out the form, obtainable from the Clerk of the Court in the Southern District. They can fax you a copy. You do not need to have Yolanda sign it. You may sign it for her. This can be confusing because, often times, there is only a line for the Applicant, however, you may sign in that spot. These are very easy forms to fill out. They basically ask for the name, TDC number and location of the Applicant. Additionally, they ask for a brief synopsis of the requested grounds for review. Simply type in the asserted grounds for review as stated in the memorandum I have written, example - Ground for Review Number One - and write in whatever I have written.

4. I indicated within the memorandum that there are NO days left from the denial of the State Writ and the filing of the Federal Writ, therefore, there cannot be an exhaustion of State issues prior to the filing of the Federal Writ. This problem had nothing to do with you or I. Unfortunately, as I have informed you, Billy sat on the State writ for 4 months, only requesting my help in the middle of September 2000. I worked on it non-stop until it was finished so that Yolanda's federal rights would not be jeopardized. I did not know at that time that she desired to pursue this, however, this is my standard operating procedure. If you recall I have been mentioning this to you ever since Yolanda hired you, as I wanted to make sure you understood this issue.

5. At some point, the Federal District trial judge will issue his findings of fact, very likely denying relief. At that point, you have to file a motion with the trial judge requesting a certificate of probable cause (aka certificate of appealability). When he denies the motion, you appeal that denial (*not* the denial of the underlying 2254) to the Fifth circuit. It is at this point that the Fifth Circuit either grants the certificate of appealability, reviewing the issues I have written on, or not. All this is really procedural traps to weed out prisoner petitions. If someone tries to appeal the 2254 directly, it will be thrown out without opinion for lack of jurisdiction. All this procedure is explained within the statutes. They are much more easily understood than our state statutes discussing the same issues. They are contained in the United States Code, Title 28, Chapter 153. For example, below is 2242 which explains what goes into the Application, remembering that what I have provided is the memorandum in support of the Application.

United States Code
TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE
PART VI - PARTICULAR PROCEEDINGS
CHAPTER 153 - HABEAS CORPUS
Section 2242. Application
  Application for a writ of habeas corpus shall be in writing
    signed and verified by the person for whose relief it is intended
    or by someone acting in his behalf.
      It shall allege the facts concerning the applicant's commitment
    or detention, the name of the person who has custody over him and
    by virtue of what claim or authority, if known.
      It may be amended or supplemented as provided in the rules of
    procedure applicable to civil actions.

If addressed to the Supreme Court, a justice thereof or a circuit judge it shall state the reasons for not making application to the district court of the district in which the applicant is held.

Here is 2254, the statute upon which people apply to go into the federal system. You will note that I bolded the section that I believe applies to Yolanda with respect to the lack of exhaustion of State issues:

United States Code
TITLE 28 - JUDICIARY AND JUDICIAL PROCEDURE
PART VI - PARTICULAR PROCEEDINGS
CHAPTER 153 - HABEAS CORPUS

Section 2254. State custody; remedies in Federal courts

(a) The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that -
  (A) the applicant has exhausted the remedies available in the courts of the State; or
  (B)(i) there is an absence of available State corrective process; or
  **(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.**
(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.
(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

(e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

(2) If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that -

(A) the claim relies on -

(i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or

(ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and

(B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

(f) If the applicant challenges the sufficiency of the evidence adduced in such State court proceeding to support the State court's determination of a factual issue made therein, the applicant, if able, shall produce that part of the record pertinent to a determination of the sufficiency of the evidence to support such determination. If the applicant, because of indigency or other reason is unable to produce such part of the record, then the State shall produce such part of the record and the Federal court shall direct the State to do so by order directed to an appropriate State official. If the State cannot provide such pertinent part of the record, then the court shall determine under the existing facts and circumstances what weight shall be given to the State court's factual determination.

(g) A copy of the official records of the State court, duly certified by the clerk of such court to be a true and correct copy of a finding, judicial opinion, or other reliable written indicia showing such a factual determination by the State court shall be admissible in the Federal court proceeding.

(h) Except as provided in section 408 of the Controlled Substances Act, in all proceedings brought under this section, and

any subsequent proceedings on review, the court may appoint counsel for an applicant who is or becomes financially unable to afford counsel, except as provided by a rule promulgated by the Supreme Court pursuant to statutory authority. Appointment of counsel under this section shall be governed by section 3006A of title 18.

(i) The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254.

I know this seems confusing, but actually it is relatively simple, but there can be no mistakes. People have a tendency to be overwhelmed which can produce the pitfalls. As I am completed with the writing process, my involvement is complete. I received a letter from Yolanda verifying this fact some months ago. Additionally, T.R. informed me, in our most recent telephone conversation, that he would deliver a copy to Yolanda. In any event, if you have any questions, as I am sure you might, please do not hesitate to call me. I will be glad to assist you, however, because of the mis-communications that have existed between your firm and myself, I would like to respond in writing so that no further mis-communication can occur.

Sincerely,

*(signature)*

Suzanne Kramer

c: Yolanda Saldivar
TDC# 733126
1916 N. Highway 36 Bypass
Gatesville, Texas 76596



# Law Office of Suzanne Marie Kramer

127 Lewis Street
San Antonio, Texas 78212
210-226-2161 - Telephone
210-226-2201 - Telefax
CATtalyst@aol.com

November 15, 2005

Yolanda Saldivar
733126
Lane Murray Unit
1916 N. Highway 36 ByPass
Gatesville, TX 76596

Re: Recent Correspondence

Dear Ms. Saldivar;

The problem with your proposed plan is this - because of the delay caused by Billy, the Mandamus in the Court of Criminal Appeals must be filed at the same time as the 2254 Federal Writ. As I am not a federal attorney for this purpose, whoever files the 2254 Federal Writ will be the person eventually dealing with the Fifth Circuit. Therefore, I am unable to do this. There is no real issue of carrying the case through the State courts because once the mandamus gets filed, the Court of Criminal Appeals will probably order the District Court to forward the State Writ. They will then either grant relief or they won't. Based upon past experience, I would imagine that they will deny relief. Once they deny relief, the 2254 kicks in. This is where the problem lies. There is no time window to file the 2254 once the Court of Criminal Appeals denies relief on the State writ - not even one day. That is why the 2254 writ must be filed contemporaneously with the mandamus, so that the statute of limitations does not prevent you from requesting review pursuant to a 2254 writ.

I have been contemplating getting licensed with the Fifth Circuit, and actually mailed my application and fee, however, I mailed it on the day the Hurricane Katrina hit New Orleans and they did not receive it. I have since been reconsidering whether I want to do this or not. Also, as you have been told, there is a significant amount of work remaining on this case. I have always been willing to work in the background helping whatever attorney is signed on as the lead attorney. I have recently had to revamp my law practice because of certain changes in the San Antonio legal scene, and money has become very tight. I simply cannot afford to work on this case for the money that you are able to pay, as there is much more work remaining on the case. I recommend that you contact John Fahle, 210-212-9141, who is an attorney relatively familiar with your case. He usually charges pretty high fees, as this type of work is very complicated, laborious, and time consuming, but it cannot hurt to ask. Also, he does like high profile cases. Should my situation change, and I decide to obtain my license in the Fifth Circuit, I will let you know.

Sincerely,

Suzanne Kramer

THE STATE OF TEXAS §

COUNTY OF HARRIS §

Re: State of Texas v. Yolanda Saldivar, 214th Judicial District, Nueces County Texas, Case No. 95-CR-1187-F, to file a Writ of Habeas Corpus on a conviction for murder.

**THIS CONTRACT** entered into by Roland B. Moore III, 1314 Texas Ave. Ste 1705, Houston, Texas and Ms. Yolanda Saldivar, hereinafter referred to as Client.

**WITNESSETH:**

The Client, Yolanda Saldivar having need of legal counsel, advice and representation with regard to a State Habeas petition on a charge of a murder, in Nueces County, Texas hereby employs Attorney, under the following conditions:

1. Attorney will represent Client by investigating the law and facts, and by preparing a Writ of Habeas Corpus for Client.

2. In consideration for Attorney's representation, Client agrees to pay unto the Attorney as his legal fee, the sum of $10,000, which sum is to be paid as follows: $10000 in advance against an hourly rate of $200. Client represents that the fee paid is derived from lawful business activity. Attorney represents that he will make every effort to complete the habeas petition within this amount, but cannot guarantee that such will be possible. If unforeseen eventualities result in the Petition taking more time, Client will reimburse Counsel at the rate of $200 per hour, but in no event will the fee exceed $20,000.

3. It is further understood by the parties to this contract, that unless set out in paragraph #4, the legal fee agreed on does not include any of the following: Bail bonds, court costs, fines, costs of record, transcripts or depositions.

4. Other conditions and terms of this contract are as follows: None.

5. It is further understood by all parties to this agreement that Attorney has not promised to any one what will be the final result of the causes of action pending against Client. It is also understood that in the event that the Client is involved in any additional distinct cause of action, the legal fee agreed on herein does not include the additional cause of action.

It is further understood that the above fee does not include an appeal to the U.S. Courts, or to the Supreme Court of the United States, and does not include an appearance before the Board of Pardons and Paroles.

ATTORNEY _____
              ROLAND B. MOORE III

CLIENT _____

ADDRESS _____
    Barbara J. Ibarra
    16875 Martinez-Losoya
    San Antonio, Texas 78221

DATE: February 2, 2007

# ROLAND BRICE MOORE III, P.C.
## ATTORNEY-AT-LAW
The Great Southwest Building
1314 Texas Ave. Suite 1705
Houston, Texas 77002

Office: 713 229-8500                                         Fax: 713 229-8989
Board Certified in Criminal Law    Texas Board of Legal Specialization

March 7, 2007

Ms. Yolanda Saldivar #733126
1916 N. Hwy 36 By Pass
Lane Murray Unit
Gatesville Texas 76596

Re: Your Writ

Dear Ms. Saldivar,

Thank you for your letter. I have made arrangements to have the Court in Corpus forward the record of your case to me via U.P.S. The new judge in the 214th District Court has approved the clerk's doing this. I expect that may take a week before we get it.

At this point, it would appear that too much time has elapsed for you to be able to file a Federal Writ. As you mentioned, that deadline passed approximately one year after the mandate came down in your case. There are some very complicated rules for determining the AEDPA deadline, but suffice it to say, we are way beyond that now. I do have a copy of the Writ the filing of which is in dispute. I will be able to review the Court's records to see if there is any indication that it was ever filed.

However, just having this document is just a start. Until I read the record of your case, I have no way of knowing whether it was done properly and thoroughly or not. Obviously, I can't just put my signature on something like this, and send it in, without basically going back and insuring that everything has been done properly. As you know, you only get one try at a Writ of Habeas Corpus, and I do not want to squander that by doing something hasty.

If the Court says it did not receive the original writ, frankly, it is going to be difficult to prove otherwise. However, we will do our best. Do you know where I can get in touch with Ms. Kramer?

I expect that we will be corresponding quite frequently doing this process, and I look forward to filing a Writ that has everything possible that might work towards undoing your conviction.

Sincerely,

Roland B. Moore III

# ROLAND BRICE MOORE III, P.C.
## ATTORNEY-AT-LAW
The Great Southwest Building
1314 Texas Ave. Suite 1705
Houston, Texas 77002

**Office: 713 229-8500**                                                                                        Fax: 713 229-8989

Board Certified in Criminal Law   Texas Board of Legal Specialization

June 22, 2007

Ms. Barbara J. Ibarra
16875 Martinez-Losoya
San Antonio, Texas 78221

RE: Writ of Habeas Corpus for Yolanda Saldivar

Dear Mrs. Ibarra,

This letter reflects the substance of our recent phone call regarding Yolanda's case.
Our original agreement was that I would take the document that you furnished me that was titled "Writ of Habeas Corpus," review it, and make whatever improvements might be necessary and file it for Yolanda. Our mutual assumption when I agreed to undertake the case was that there would be a core of a valid Writ within the document that your deceased attorney prepared.

As I informed you, that expectation turned out to be a misplaced one. There is nothing in that document that might in any way fit the definition of a Writ of Habeas Corpus. It might better be described as a rephrasing of the original appellate brief. There is nothing in it that is of any value to Yolanda. Fortunately, the Corpus District Court never filed it, or we would not still be discussing her case. Her one chance at a Writ would have been wasted.

Therefore, it is necessary to start over from square one, both with regard to the assumptions underlying my representing her and with regard to the work on her case. In our recent telephone call, we agreed to modify the retainer agreement. Our new agreement is that I will review the record of Yolanda's case at the same hourly rate that was quoted in the first Retainer Agreement. I will then tell you what if anything I think might or might not be possible with regard to filing a Writ for her. This means that I cannot guarantee what the upper limit might be regarding my services if it looks like there is something that might be done for her. Therefore, we are agreeing that the original limit of $20,000 on my fee is no longer in effect. I cannot say if I will find anything that might be useful to Yolanda, nor can I say what it will cost now what the ultimate cost might be. You mentioned your doubts about the ballistics in the case, for instance. As you know, the cost of hiring a ballistics expert would be extra and apart from my fees in the case.

If I find nothing on my review, and I recommend that filing a Writ would be futile and a waste of money, I will still refund to you any excess fee that you might have paid me, after deductions for my services.

I have gotten the important parts of the record from the Court of Appeals here, to the tune of 6230 pages. The charge for copying the record was $623.00. I have billed your account that amount and for an additional $1200 to reflect the six hours that I have spent working to date. This includes my reading the copious materials that you furnished me, including the first "Writ", my phone calls with you, with the Courts in Corpus and in Houston, and in my retrieving the record. Therefore, I have billed a total of $1823.00 to you at this point. I have started reading the record, and will let you know when I am through.

I am enclosing an additional copy of this letter. If all of the above is agreeable to you, please sign in the space provided below, and send me the second copy back in the enclosed self-addressed and stamped envelope.

I regret that there was nothing of value in the document that was prepared for you by the deceased attorney. I will do my best to find something that will help.

Sincerely,


Roland B. Moore III

Agreed: _____        Agreed: _____
        Barbara J. Ibarra                                        Maria Elida Saldivar

Dated: _____         Dated: _____

# ROLAND BRICE MOORE III, P.C.
## ATTORNEY-AT-LAW
The Great Southwest Building
1314 Texas Ave. Suite 1705
Houston, Texas 77002

Office: 713 229-8500　　　　　　　　　　　　　　　　　　　　　　Fax: 713 229-8989

Board Certified in Criminal Law　　Texas Board of Legal Specialization

July 18, 2006

Barbara J. Ibarra
16875 Martinez-Losoya
San Antonio, Texas 78221

RE: Writ of Habeas Corpus for Yolanda Saldivar

Dear Mrs. Ibarra,

This letter reflects the substance of our recent phone call regarding Yolanda's case. Our original agreement was that I would take the document that you furnished me that was titled "Writ of Habeas Corpus," review it, and make whatever improvements might be necessary and file it for Yolanda. Our mutual assumption when I agreed to undertake the case was that there would be a core of a valid Writ within the document that your deceased attorney prepared.

As I informed you, that expectation turned out to be a misplaced one. There is nothing in that document that might in any way fit the definition of a Writ of Habeas Corpus. It might better be described as a rephrasing of the original appellate brief. There is nothing in it that is of any value to Yolanda. Fortunately, the Corpus District Court never filed it, or we would not still be discussing her case. Her one chance at a Writ would have been wasted.

Therefore, it is necessary to start over from square one, both with regard to the assumptions underlying my representing her and with regard to the work on her case. In our recent telephone call, we agreed to modify the retainer agreement. Our new agreement is that I will review the record of Yolanda's case at the same hourly rate that was quoted in the first Retainer Agreement. I will then tell you what if anything I think might or might not be possible with regard to filing a Writ for her. This means that I cannot guarantee what the upper limit might be regarding my services if it looks like there is something that might be done for her. Therefore, we are agreeing that the original limit of $20,000 on my fee is no longer in effect. I cannot say if I will find anything that might be useful to Yolanda, nor can I say what it will cost now what the ultimate cost might be. You mentioned your doubts about the ballistics in the case, for instance. As you know, the cost of hiring a ballistics expert would be extra and apart from my fees in the case.

If I find nothing on my review, and I recommend that filing a Writ would be futile and a waste of money, I will still refund to you any excess fee that you might have paid me, after deductions for my services.

I have gotten the important parts of the record from the Court of Appeals here, to the tune of 6230 pages. The charge for copying the record was $623.00. I have billed your account that amount and for an additional $1200 to reflect the six hours that I have spent working to date. This includes my reading the copious materials that you furnished me, including the first "Writ", my phone calls with you, with the Courts in Corpus and in Houston, and in my retrieving the record. Therefore, I have billed a total of $1823.00 to you at this point. I have started reading the record, and will let you know when I am through.

I am enclosing an additional copy of this letter. If all of the above is agreeable to you, please sign in the space provided below, and send me the second copy back in the enclosed self-addressed and stamped envelope.

I regret that there was nothing of value in the document that was prepared for you by the deceased attorney. I will do my best to find something that will help.

Sincerely,

Roland B. Moore III

Agreed: _____
        Barbara J. Ibarra

Dated: _____

# ROLAND BRICE MOORE III, P.C.
ATTORNEY-AT-LAW
The Great Southwest Building
1314 Texas Ave. Suite 1705
Houston, Texas 77002

**Office: 713 229-8500**                                                                                   **Fax: 713 229-8989**

Board Certified in Criminal Law    Texas Board of Legal Specialization

August 22, 2007

Nora and Barbara J. Ibarra
16875 Martinez-Losoya
San Antonio, Texas 78221

RE: Writ of Habeas Corpus for Yolanda Saldivar

Dear Saldivar Family Members,

Attached please find a copy of the letter that I have sent to Yolanda Saldivar, along with a copy of our briefing of her trial. At this time, there is nothing of any legal merit that could form the basis for a writ of habeas corpus. I will try to arrange a telephone call to the Yolanda after she has received these materials. I have been holding off doing so until our review was complete.

Our efforts in reviewing this gigantic transcript have consumed the remainder of the $10,000 retainer, which you deposited with me. The total time expended is 42 hours, most of which was spent reading through the entirety of the record. I am furnishing you with a copy of our summary of the trial record with his letter. If you wish to pursue the questioning of the Hotel employees, I would expect that would cost around another $1500. As I wrote to Yolanda, this seems like it is grasping at straws, but that is the price of having had very good lawyers at trial and a very cooperative judge. They did not leave us any target to shoot it.

Sincerely,

Roland B. Moore III