IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

HOUSTON DIVISION

United States District Court
Southern District of Texas
ENTERED

FEB 2-5 2009

Michael N. Milby, Clerk of Court
By Deputy Clerk

| | | |
|---|---|---|
| YOLANDA SALDIVAR, #733126 | § | |
| | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-08-1026 |
| | § | |
| NATHANIEL QUARTERMAN | § | |
| DIRECTOR, TDCJ-CID | § | |

**OPINION AND ORDER**

Before the Court is Petitioner's "Objections to Magistrate Judge's Final Judgment" and

Petitioner's "'Supplemental' to her Objections." (Docket Entry ("Doc.") Nos. 27 & 28). As

a preliminary matter, since the parties consented to the jurisdication of this Court (28 U.S.C. §

636 (c)), Petitioner's objections are misplaced. Notwithstanding, the Court considers

Petitioner's objections and supplement to her objections (hereinafter referred to as "Petitioner's

Motions") as a motion for reconsideration. FED. R. CIV. P. 59.

In Petitioner's Motions, she requests the Court reconsider the decision that her federal

writ of habeas corpus is time barred and, in the alterative, reconsider the decision that she is not

entitled to equitable tolling. Petitioner attaches numerous exhibits to her Motions which she

contends support her position. However, reviewing Petitioner's Motions, along with her

exhibits, only solidifies the Court's conclusion that Petitioner's federal writ of habeas corpus is

time barred. Moreover, Petitioner's assertion that a state created impediment existed since the

state never ruled upon her Article 11.07 state writ of habeas corpus, is simply unavailing. As

discussed by this Court in its previous Order, there is simply no record that a state post-conviction

petition was ever actually filed on behalf of Petitioner, nor does Petitioner offer any competent summary judgment evidence of its filing. Finally, even considering Petitioner's Motions and the attached exhibits, the Court once again finds that no exceptional circumstances exist which would warrant equitable tolling in this case. The Court, therefore, concludes that Petitioner's Motions for reconsideration (Doc. Nos. 27 & 28) must be, and they are hereby, **DENIED**.

**DONE** at Brownsville, Texas, this _24th_ day of February, 2009.

JOHN R. FROESCHNER
UNITED STATES MAGISTRATE JUDGE

E    X    H    I    B    I    T    I



# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

## NO. WR-69,661-02

**YOLANDA SALDIVAR, Relator**

v.

**NUECES COUNTY DISTRICT CLERK, Respondent**

ON APPLICATION FOR A WRIT OF MANDAMUS
CAUSE NO. 95-CR-1787-F IN THE 214TH JUDICIAL DISTRICT COURT
FROM NUECES COUNTY

*Per curiam.*

### O R D E R

Relator has filed a motion for leave to file a writ of mandamus pursuant to the original jurisdiction of this Court. In it, she contends that she filed an application for a writ of habeas corpus in the 214th Judicial District Court of Nueces County, that more than 35 days have elapsed, and that the application has not yet been forwarded to this Court. This case was tried in the 228th Judicial District Court of Harris County under Harris County cause number 704424, but Harris County states

<u>**E**</u>    <u>**X**</u>    <u>**H**</u>    <u>**I**</u>    <u>**B**</u>    <u>**I**</u>    <u>**T**</u>        <u>**J**</u>


901 LEOPARD, ROOM 206
NUECES COUNTY COURTHOUSE
CORPUS CHRISTI, TX 78401-3681

TELEPHONE
(361) 888-0410 FELONY DIVISION
(361) 888-0286 MISDEMEANOR DIVISION
(361) 888-0348 HOT CHECK DIVISION

**CARLOS VALDEZ**
DISTRICT ATTORNEY
105TH JUDICIAL DISTRICT
NUECES, KLEBERG AND KENEDY COUNTIES

TELEPHONE
(361) 595-8544 KLEBERG DIVISION

FACSIMILE
(361) 888-0399 FELONY DIVISION
(361) 888-0700 MISDEMEANOR DIVISION
(361) 888-0381 VICTIM ADVOCATE

May 12, 2009

Ms. Louise Pearson, Clerk
Court of Criminal Appeals of Texas
209 West 14th Street, Rm. 201
P.O. Box 12308    Capitol Station
Austin, TX 78711

Re: <u>Saldivar v. Nueces Co. Dist. Clerk</u>,
No. WR-69,661-02

Dear Ms. Pearson:

On April 22nd, the Court issued an order in the above-referenced case, directing the Nueces County District Clerk to file a response to the Relator's motion for leave to file writ of mandamus. Because I was familiar with this case's background, after speaking with the head of the criminal section of the district clerk's office and with the Court's general counsel, Sian Schilhab, it was agreed that I would respond to the motion by providing a chronology of events leading to its filing. I apologize for the delay in doing so but I was out of the state for eleven days due to the hospitalization and subsequent death of my mother-in-law and then had to take another day off last week to help my college-age daughter move at the end of the semester.

On April 23, 2009, I reviewed what I assume is everything related to the underlying case that is in the custody of the district clerk. Based on that review and a review of my notes of phone conversations and actions from September and October of 2000, the following is an account of why no action has been taken on the Relator's post-conviction application for writ of habeas corpus, and why her motion for leave to file writ of mandamus should be denied.

The Relator was indicted for the murder of Selena Quintanilla Perez on April 6, 1995. The case was assigned to the 214th District Court of Nueces County, Texas, as Cause No. 95-CR-1187-F. (See attached Exh. 1).



On August 8, 1995, the presiding judge of that court--then, Mike Westergren-granted the Relator's motion for change of venue. (Exh. 2). Although that order does not recite the court to which venue was changed, in accordance with Tex. Code Crim. Proc. art. 31.05, a September 27, 1995, letter from the Nueces County District Clerk to the Harris County District Clerk documents the transfer of all papers in the cause to the latter clerk. (Exh. 3).

Presumably because the indictment was presented prior to the effective date of Tex. Code Crim. Proc. art. 31.09, the case was at some point assigned to the 228th District Court of Harris County, Texas, as Cause No. 704424, where the Relator was convicted of murder and sentenced to life in prison on October 26, 1995. Nueces County district judge Mike Westergren sat as presiding judge of the Harris County court. (Exh. 4). On December 27, 1995, the Relator's motion for new trial was overruled. (Exh. 5).

The following day, the Relator filed her notice of appeal with the Harris County District Clerk. (Exh. 6). Her appeal was assigned to the 14th Court of Appeals, (Exh. 7), which affirmed her conviction on October 1, 1998. (See 980 S.W.2d 475). Shortly thereafter, the Relator wrote two letters to her court-appointed appellate attorney, asking him to file a motion for rehearing but indicating that an attorney had been retained to file a petition for discretionary review. (Exh. 8 & 9). The court of appeals overruled the Relator's motion for rehearing on December 10, 1998, and five days later, the Relator's court-appointed appellate attorney filed a motion to withdraw as counsel, noting that Roy Greenwood of Austin had been retained to represent the Relator on further appellate matters. (Exh. 10). This representation was confirmed in a January 6, 1999, letter from Mr. Greenwood to Judge Westergren. (Exh. 11). This Court refused the Relator's petition for discretionary review on August 18, 1999.

On September 7, 2000, Mr. Greenwood wrote the Harris County District Clerk to advise that he was returning the appellate record to such clerk so that the Relator's newly retained attorney, William Berchelmann of San Antonio, could check it out. (Exh. 12).

As I recall, on or about September 23, 2000, I received a call from this Court's then-general counsel, Rick Wetzel, informing me that Mr. Berchelmann apparently attempted to file a post-conviction application for writ of habeas corpus directly with the Court of Criminal Appeals. I don't recall whether Mr. Wetzel advised that he was forwarding it to Judge Westergren or just returning it to Mr. Berchelmann but the certificate of service on such application indicated that copies of it were sent to Judge Westergren as judge of the 214th District Court of Nueces County, our office, the State Prosecuting Attorney, and the Texas Attorney General. (See pages 98-99 of such ninety-nine page application, excerpts of which are Exh. 13). During my recent review of the papers relating to this case now in the possession of the Nueces County District Clerk, I located one such copy--perhaps that sent by Mr. Berchelmann to Judge Westergren--with a stamp indicating it was "received" by the

Nueces County District Clerk on September 26, 2000. (See last page of relevant excerpts from such application in Exh. 13).

In any event, notes I made at the time indicate that call prompted a series of calls by me to the 228th District Court, the Harris County District Clerk's office, this Court, the Harris County D.A.'s office, Judge Westergren, and Mr. Berchelmann's co-counsel--Suzanne Kramer--because he was out of his office for several days, on September 27 & 28, 2000. John Jasuta, the staff attorney who was then in charge of habeas matters in this Court advised that the application needed to be filed in the 228th District Court of Harris County--the court in which the conviction was obtained. The post-conviction department of the Harris County District Clerk's criminal division advised that their office had no record of the application being filed there. After conferring with Ms. Kramer, the Nueces County D.A., Judge Westergren, and the court coordinator for the 228th District Court of Harris County, it was agreed that we would endeavor to have the case transferred back from the that court to the 214th District Court of Nueces County, where it originated, pursuant to Tex. Code Crim. Proc. art. 31.08, so that--once transferred--the Relator's attorneys could file her application in that court.

Having received the written consent of Ms. Kramer and the Nueces County District Attorney to such transfer, on October 30, 2000, Judge Westergren--as presiding judge of the 228th District Court of Harris County--signed an order in Cause No. 704424 returning the cause to Nueces County and directing the Harris County District Clerk to transmit all of the original papers to the clerk of the 214th District Court of Nueces County. Judge Poe of the 228th District Court of Harris County approved such order on what appears to be November 21, 2000. (Exh. 14). On December 20, 2000, the Harris County District Clerk sent the original documents in the case to the Nueces County District Clerk. (Exh. 15). The Nueces County District Clerk acknowledged receipt of such documents on January 9, 2001. (Exh. 16).

Once the transfer and return of the case was completed, however, the Relator's attorneys never filed her application for writ of habeas corpus in the 214th District Court of Nueces County. It is for that reason that no action has ever been taken on such application. To reiterate, initially--on or about September 23, 2000--the Relator's attorneys attempted to file her application directly with this Court. At that time, the case was still in the 228th District Court of Harris County but the application was never filed in that court. A copy of the application was received by the Nueces County District Clerk on September 26, 2000, but at that time, there was no Nueces County case. The process to return the case to Nueces County began with Judge Westergren's order on October 30, 2000--approved by Judge Poe on or about November 21, 2000--and culminated with the Nueces County District Clerk's receipt of all documents from the Harris County District Clerk on January 9, 2001. From October 30, 2000, to date, neither the Relator nor her attorneys has filed an application for writ of

habeas corpus in the 214th District Court of Nueces County relating to this case. For that matter, at no time has the Relator or her attorneys ever filed an application for writ of habeas corpus in the appropriate trial court. This was the conclusion recently reached by a federal magistrate judge in dismissing the Relator's federal petition for writ of habeas corpus. See Saldivar v. Quarterman, No. H-08-1026, 2009 WL 249458, at *2-3, 2009 U.S. Dist. LEXIS 7000, at *7-11 (S.D. Tex. Feb. 2, 2009).

This may well be why the Relator's previous motion for leave to file original writ of mandamus was denied by this Court without written order on May 21, 2008, in Cause No. WR-69,661-01, and why it should be denied in this case.

That notwithstanding (and while--as I discussed with Ms. Schilhab--for obvious ethical and conflict of interest reasons, I hesitate to offer any suggestion that might be construed as advice to the Relator), because a copy of the Relator's application was received by the Nueces County District Clerk on September 26, 2000, and that copy is still in her possession, the simplest solution to the present situation might be for the Relator to ask this Court to direct the Nueces County District Clerk to "file" that copy at the present time as though it were the original. Once filed, the State could answer the application and the trial court could make its findings and forward such documents to this Court. This would provide the Relator with the same result she seeks in her motion for leave to file writ of mandamus. It would also seem to be the most equitable solution for all involved because it would allow the Relator to file what she paid Mr. Berchelmann and Ms. Kramer to prepare on her behalf and would allow the State, the trial court, and this Court to act on such product. This solution would also allow the Relator, who is not entitled to court-appointed counsel in a post-conviction habeas corpus proceeding, much less effective counsel, see Ex parte Graves, 70 S.W.3d 103 (Tex. Crim. App. 2002), and who has been able to retain at least three attorneys to work on her case, (see Exh. 17 and Saldivar v. Quarterman, 2009 WL 249458, at *3-4, 2009 U.S. Dist. LEXIS 7000, at *12-15), to have the application she paid to have filed addressed without incurring any more legal fees. If the Court were to entertain such a request, it might be necessary to exempt the Relator from the requirement that she utilize the prescribed form, as Tex. R. App. P. 73.1 & 73.2 were not in effect at the time her attorneys attempted to file her application, and consequently, the copy of the application received by the Nueces County District Clerk on September 26, 2000 was not accompanied by such form.

I cannot conclude this response without pausing to note that I categorically deny making the statement attributed to me by the Relator's sister in Exhibit E to the Relator's motion for leave to file writ of mandamus. The only contact I recall ever having with any member of the Relator's family was that with her mother in the hallway outside of our office when she was speaking with another prosecutor. I have no idea when that contact, which lasted a minute or two, occurred but it's conceivable it was in 2003. Her sister

may have gotten my name from that brief contact or from a calling card that our receptionist may well have handed out to someone inquiring about an appellate issue, and attributed that name to someone she spoke with in the district clerk's office, where I have never worked. I was never in a location where I could have shown them anything relating to the Relator's case, much less a "box on the floor," and, having dealt with the transfer of her case back to Nueces County after the 2000 habeas fiasco, I would never have said in 2003 that "the appeal [which I knew was over in 1999] would take about two to three years for anyone to look at ... or it just might be ignored." That either never happened or her sister is confusing me with someone else with whom she spoke.

I hope this response will be of assistance to the Court in ruling on the Relator's motion for leave to file writ of mandamus. Please contact me if you need anything further.

Thank you.

Respectfully,

James D. Rosenkild
Ass't District Attorney

XC: Ms. Yolanda Saldivar
TDCJ #733126
Mountain View Unit
2305 Ransom Rd.
Gatesville, TX 76528

Ms. Patsy Perez (Att'n: Sylvia Jasso, Criminal Supervisor)
Nueces County District Clerk
901 Leopard, Rm. 313
Corpus Christi, TX 78401

Hon. Jose Longoria
214th District Court of Nueces County, Texas
901 Leopard, Rm. 902
Corpus Christi, TX 78401

Ms. Sian Schilhab, Gen'l Counsel
Court of Criminal Appeals of Texas
209 West 14th Street, Rm. 201
P.O. Box 12308    Capitol Station
Austin, TX 78711

E X H I B I T K



OFFICE OF THE                                  DISTRICT ATTORNEY

901 LEOPARD, ROOM 206
NUECES COUNTY COURTHOUSE
CORPUS CHRISTI, TX 78401-3681

# CARLOS VALDEZ
DISTRICT ATTORNEY
105TH JUDICIAL DISTRICT
NUECES, KLEBERG AND KENEDY COUNTIES

TELEPHONE
(361) 888-0410 FELONY DIVISION
(361) 888-0286 MISDEMEANOR DIVISION
(361) 888-0348 HOT CHECK DIVISION

TELEPHONE
(361) 595-8544 KLEBERG DIVISION

FACSIMILE
(361) 888-0399 FELONY DIVISION
(361) 888-0700 MISDEMEANOR DIVISION
(361) 888-0381 VICTIM ADVOCATE

May 28, 2009

Ms. Louise Pearson, Clerk
Court of Criminal Appeals of Texas
209 West 14th Street, Rm. 201
P.O. Box 12308   Capitol Station
Austin, TX 78711

Re: <u>Saldivar v. Nueces Co. Dist. Clerk</u>,
No. WR-69,661-02

Dear Ms. Pearson:

We are in receipt of the Relator's May 18, 2009, response to the Nueces County District Clerk's May 12, 2009, response to the Relator's motion for leave to file writ of mandamus, which was requested by this Court in its April 22, 2009, order.

In her response, the Relator suggests that I was trying to "deceive [her] and/or this Court" by contending, in the Clerk's response, that her application for writ of habeas corpus was never filed in the appropriate court and by noting therein that the simplest solution might be for the Relator to ask this Court to direct the Nueces County District Clerk to "file" the copy of the application for writ of habeas corpus that her attorneys sent to the 214th District Court of Nueces County back in 2000 (when they attempted to file the original directly with this Court at a time when the case was still before the 228th District Court of Harris County), so that the State might answer it, the trial court could enter findings regarding it, and this Court could address it. The Relator makes it clear that she does not want to ask this Court to so direct the Clerk because of the effect she believes that action might have on her ability to seek habeas relief in federal court.

The State, therefore, asks that the Relator's motion for leave to file writ of mandamus be denied because, as noted in the response we filed on behalf of the Clerk, and contrary to the Relator's repeated protestations, <u>at no time has she or her attorneys ever filed an application for writ of habeas corpus in the appropriate trial court.</u>



As discussed in such response, due to the granting of the Relator's motion for change of venue, "the court in which the conviction being challenged was obtained" was the 228th District Court of Harris County. On or about September 23, 2000, the Relator's attorneys attempted to file her application for writ of habeas corpus directly with this Court. At that time, the case was still in the 228th District Court of Harris County but the application was never filed in that court. A copy of an application for writ of habeas corpus was received by the Nueces County District Clerk on September 26, 2000. The certificate of service on that copy indicated that copies had been sent to the Nueces County District Attorney, the State Prosecuting Attorney, the Texas Attorney General, and Judge Westergren as judge of the 214th District Court of Nueces County.[1] Presumably, the copy received by the Nueces County District Clerk was that sent to Judge Westergren as judge of the 214th District Court of Nueces County. However, at that time, there was no Nueces County case. The process to return the case to Nueces County began with the Article 31.08 order signed on October 30, 2000, by Judge Westergren, as presiding judge of the 228th District Court of Harris County--approved by Judge Poe on or about November 21, 2000--and culminated with the Nueces County District Clerk's receipt of all documents associated with the case from the Harris County District Clerk on January 9, 2001. Sometime after that date, the copy of the Relator's application, which was received by the Nueces County District Clerk on September 26, 2000, when there was no Nueces County case, was placed in one of the boxes containing the documents associated with this case that had been returned from Harris County. That is where I saw it during my search of those boxes last month.

The fact that a copy of such application was received by the Nueces County District Clerk at a time when the Relator had no case in Nueces County does not make it "filed" in the Relator's case any more than did this Court's receipt of the original application that the Relator's attorneys attempted to file directly with it. Moreover, the fact that the Nueces County District Clerk did not return the copy it received to the Relator's attorneys or simply threw it away, as this Court did with the original, did not make it "filed" on the subsequent date that the case and its associated documents were returned from Harris County to Nueces County.

It is for that reason--and not due to "deception" on the part

_____

[1]On page 4 of her response, the Relator mischaracterizes her attorneys' sending copies of her application to these individuals as "filings," as she does their attempt to file the original with this Court. It is clear from the caption in that application ("In the Court of Criminal Appeals of Texas") and the fact that the certificate of service lists only the above-referenced four individuals and not this Court, that her attorneys were merely sending copies of the application that they attempted to file directly in this Court to such individuals.

of the Nueces County District Clerk, the Nueces County District Attorney, and/or the presiding judge of the 214th District Court of Nueces County--that no action has been taken on the application for writ of habeas corpus that the Relator's attorneys attempted to file directly with this Court in September of 2000. The Relator retained two attorneys at the time--one of whom had been a judge on this Court--to prepare and file her post-conviction application for writ of habeas corpus. It is not the fault of the State, the Clerk, and/or the trial court that it did not get filed. In fact, it was only as a result of my initiative--not the Relator's attorneys'-- that her case was ever transferred back from the 228th District Court of Harris County to the 214th District Court of Nueces County in 2000-01, and it was only as a result of my pouring through three or four file boxes in the district clerk's office last month in order to provide this Court with a chronology of events in this case that a copy of the application for writ of habeas corpus that the Relator's attorneys attempted to file directly with this Court was found. It is for those reasons that the Relator's suggestion that I had a devious motive for proposing that she request that the copy of her application in the possession of the Nueces County District Clerk be "filed" at the present time as an original is a little hard to swallow.

The State would like nothing more than to answer the application the Relator's attorneys attempted to file directly with this Court back in 2000. In fact, the State would be happy to have this Court dispose of such application on its merits even without the State having the benefit of answering it or the trial court having the opportunity to file findings and conclusions concerning it. But, in light of the Relator's response, wherein she makes it clear that she does not want to request this Court direct the clerk to "file" the copy at the present time, there is no, and there has never been an, application on file to be answered. For this reason, this Court should deny the Relator's motion for leave to file writ of mandamus, wherein she prays that this Court direct "the Respondent" (presumably the Clerk) "to comply with the requirements of 11.07." All duties imposed on the Clerk in Article 11.07 are premised on the requirement that an application for writ of habeas corpus "must be filed with the clerk of the court in which the conviction being challenged was obtained." Since the Relator's application was not so filed, the Clerk has not failed to carry out her ministerial duties. To grant the Relator's motion, then, would be to fault the Clerk for the Relator's attorneys' actions or lack thereof and endorse the Relator's allegation on page 9 of her response that either a deputy clerk or I deceived this Court and/or the federal district court by "hindering, altering, or manipulating Relator's trial court record" when nothing could be further from the truth.

Please associate this reply with the Court's papers in this case and contact me if you need anything further. A PDF copy of this letter is being emailed to the Court's general counsel this date because the undersigned noticed on the Court's website that this matter was submitted to the Court yesterday. The original and

eleven copies are being mailed to the Court.

Thank you.

Respectfully,

James D. Rosenkild
Ass't District Attorney

XC: Ms. Yolanda Saldivar
    TDCJ #733126
    Mountain View Unit
    2305 Ransom Rd.
    Gatesville, TX 76528

    Ms. Patsy Perez (Att'n: Sylvia Jasso, Criminal Supervisor)
    Nueces County District Clerk
    901 Leopard, Rm. 313
    Corpus Christi, TX 78401

    Hon. Jose Longoria
    214th District Court of Nueces County, Texas
    901 Leopard, Rm. 902
    Corpus Christi, TX 78401

    Ms. Sian Schilhab, Gen'l Counsel
    Court of Criminal Appeals of Texas
    209 West 14th Street, Rm. 201
    P.O. Box 12308    Capitol Station
    Austin, TX 78711

E    X    H    I    B    I    T         L



# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. WR-69,661-02

### YOLANDA SALDIVAR, Relator

### v.

### NUECES COUNTY DISTRICT CLERK, Respondent

### ON APPLICATION FOR A WRIT OF MANDAMUS
### CAUSE NO. 95-CR-1787-F IN THE 214ᵀᴴ JUDICIAL DISTRICT COURT
### FROM NUECES COUNTY

*Per curiam.*

## O R D E R

Relator has filed a motion for leave to file a writ of mandamus pursuant to the original

jurisdiction of this Court. In it, she contends that she filed an application for a writ of habeas corpus

in the 214ᵗʰ Judicial District Court of Nueces County on September 26, 2000 and it has never been

forwarded to this Court.

Applicant was originally indicted in Nueces County, but the case was then transferred to

Harris County for trial. This Court held this mandamus in abeyance and ordered Nueces County to respond to Relator's claims. The time line for this case has now been established, and we find that Relator is not entitled to mandamus relief.

This case was transferred to Harris County for trial on August 18, 1995. Applicant was convicted in Harris County cause number 704424 on October 26, 1995. The case was not transferred back to Nueces County until November 21, 2000, when Harris County agreed to transfer the case back to Nueces County.

Relator alleges that she filed her application for writ of habeas corpus in Nueces County in September 2000. If true, then the filing would have been in the wrong county at that time. Relator was convicted in Harris County and therefore needed to file the application with that district clerk's office. TEX. CODE CRIM. PRO. Art. 11.07 §3(b). Relator does not allege that she ever filed the application in Harris County, nor does she allege that she filed the application in Nueces County after the case had been transferred back from Harris County.

Relator has not shown that she ever properly filed a post-conviction application for writ of habeas corpus in the county of conviction. Therefore this application for leave to file is denied.

Filed: June 10, 2009
Do not publish

<u>E</u>     <u>X</u>     <u>H</u>     <u>I</u>     <u>B</u>     <u>I</u>     <u>T</u>          <u>M</u>

No. 704424

| THE STATE OF TEXAS | IN THE DISTRICT COURT |
| v. | 228TH JUDICIAL DISTRICT |
| YOLANDA SALDIVAR | OF HARRIS COUNTY, TEXAS |

## ORDER RETURNING CAUSE TO COUNTY OF ORIGINAL VENUE AND DIRECTING CLERK TO TRANSMIT PAPERS TO SUCH COUNTY

Trial of this cause--in which a change of venue was ordered--having been completed, the jury having been discharged, and with the consent of counsel for the State and the Defendant, it is ORDERED that this cause be returned to Nueces County, Texas, being the original county in which the indictment was filed prior to the change of venue, pursuant to Tex. Code Crim. Proc. art. 31.08, § 1(a) (Vernon Supp. 2000).

It is further ORDERED, pursuant to Tex. Code Crim. Proc. art. 31.08, § 2(a) (Vernon Supp. 2000), that the Clerk of the 228th District Court of Harris County, Texas--the clerk of the county in which the cause was tried--shall:

(1) make a certified copy of this order directing the return to Nueces County, Texas;

(2) gather all the original papers in the cause and certify under official seal that the papers are all the original papers on file in the court; and,

(3) transmit the items listed above to the Clerk of the 214th District Court of Nueces County, Texas, 901 Leopard, Rm. 204, Corpus Christi, TX 78401--the clerk of the court of original venue.

EXHIBIT 14

Entered this 30 day of Oct , 2000.

_____
Judge Presiding

### Certificates of Consent

This is to certify that I am counsel for Yolanda Saldivar, the Defendant in this cause, and that I consent to the return of this cause to Nueces County, Texas, as permitted by Tex. Code Crim. Proc. Ann. art. 31.08 (Vernon Supp. 2000).

Signed this 20 day of Oct , 2000.

_____
Suzanne Kramer or
William Berchelmann

This is to certify that I am counsel for the State in this cause and that I consent to the return of this cause to Nueces County, Texas, as permitted by Tex. Code Crim. Proc. Ann. art. 31.08 (Vernon Supp. 2000).

Signed this 26 day of October , 2000.

_____
Carlos Valdez

ORDER

Approved this 11/30/00

_____
Teal Poe, Judge
Presiding Judge of 329th Dist Ct
Texas

Page 2 of 2

**E      X      H      I      B      I      T            N**

.

## RESPONSE TO GRIEVANCE
## YOLANDA SALDIVAR VS. SUZANNE KRAMER
## S0060312298

Yolanda Saldivar was found guilty of the murder of Selena Quintanilla-Perez. Her case was affirmed on appeal. Saldivar and her family then hired Billy Berchelmann to file an 11.07 Post Conviction State Writ. I am an appellate attorney. Mr. Berchelmann hired me to write the State Writ for him on this case. (Attached hereto is a copy of the 11.07 Post Conviction State Writ that was filed on September 23, 2000.)

Mr. Berchelmann would, on occasion, pay me to perform appellate work for him. I was never an attorney employed by him, nor did I work in his office. I am not aware of the date that the Saldivars' hired Mr. Berchelmann, however, based upon what Mr. Berchelmann told me, it was approximately four months prior to the time that Mr. Berchelmann sought my help on the preparation of the 11.07 Writ of Habeas Corpus. Mr. Berchelmann informed me that he could only remit $1500.00 for this work, as the family had little money, to which I agreed. I obtained the record from Mr. Berchelmann's office, which was incredibly voluminous. Although I was being paid only to complete an 11.07 Post-Conviction State Writ of Habeas Corpus, I did a quick calculation and discovered that there was very little time remaining for the filing of a Federal Writ, if the Saldivar family so chose to proceed in that manner. This meant that when and if the State Writ was denied, there would be very little statutory time within which to file a Federal Writ, again, if that was something the Saldivars wanted to do. I therefore read the record and wrote the writ and filed it in approximately one week, in an attempt to salvage as much time as possible for the federal writ. (See attached Green Receipt Mailing Cards - Exhibit 1) As can be seen, I filed the writ on September 23, 2000, sending an original to the Corpus Christi District Court of original jurisdiction, with copies being sent to various places, something the rules do not require. Mr. Berchelmann and myself then went to Gatesville to visit with Ms. Saldivar. We gave her a copy of the writ and spent several hours explaining the law and the process.

At this point, my representation was complete, as Mr. Berchelmann hired me to write the writ. Mr. Berchelmann and myself agreed that if the Corpus Christi Court granted a hearing, it would be Mr. Berchelmann who would participate in this hearing. Additionally, Mr. Berchelmann and myself agreed that since he was the person hired by the Saldivar's and he hired me, that he would be the only one to deal with the media. However, feeling close to the subject as I felt Ms. Saldivar did not obtain a fair trial, I continued to monitor the case, speaking with Mr. Berchelmann frequently. I was very worried that the federal deadline, if the Saldivar family decided to hire Mr. Berchelmann for a federal writ, might not be met. This was because a Federal Writ requires approximately the same thing as the State Writ, however, every record reference must be accompanied by photocopies from the trial record. I spoke to Mr. Berchelmann, Mr. Fox, and Lisa Ybarra, frequently, asking if someone was making the photocopies from the record. I was always informed that it was being worked on.

In January of 2001, I received a letter from Ms. Saldivar requesting some explanation of the items contained within the writ. (See Exhibit 2) I responded with a letter attempting to explain her inquiries. (See Exhibit 3) I did not hear from Ms. Saldivar again for quite some time, although I was inquiring frequently of Mr. Berchelmann as to whether he had finished the photocopies and whether he had returned the record to Corpus Christi. Sometime in 2002, I inquired of Mr. Berchelmann as to the status of the writ, simply because I was curious to know as

I was still concerned about deadlines for the filing of the federal writ. Mr. Berchelmann informed me that he had heard nothing. Mr. Berchelmann later informed me that no one in Corpus Christi seemed to be aware of the existence of the writ. Mr. Berchelmann requested my copies of the green certified cards to verify proof to the Corpus Christi Court that the writ had indeed been filed. I gave these to Mr. Berchelmann immediately. Sometime later, Mr. Berchelmann called me again, informing me that someone from the District Attorney's office in Corpus Christi had called him to inform him that they were going to destroy the weapon involved in this case. Mr. Berchelmann requested a second copy of the green cards. I again faxed copies to Mr. Berchelmann and he attempted to prevent the destruction of the weapon. I informed Mr. Berchelmann that he should stay out of it and let them destroy the weapon. It was around this time that it became apparent that the writ had been misplaced by someone in Corpus Christi, even though I had sent copies to several places. No on in the District Attorney's office claimed knowledge nor any District Clerk working in the District Court. Mr. Berchelmann asked me what he should do. I told him that I did not know because this had never happened to me, but that I would find out. I inquired of the Court of Criminal Appeals and was informed that the only way to proceed would be to file a writ of mandamus ordering the Corpus Christi court to submit the writ or explain why they could not. Additionally, I was informed that when these types of situations occur, the State is estopped from responding to the writ, and the court must rely solely on what was written in our writ, as the State did not respond in time.

As I did not work for Mr. Berchelmann, I was not aware of the different documentation that came out of his office. Ms. Saldivar includes in her grievance, a copy of a letter dated July 23, 2002 from Mr. Berchelmann wherein he stated that I was working on the mandamus. I specifically had informed Mr. Berchelmann that I would work on it if I was paid, as the necessity for the mandamus was not due to any negligence on our part. Mr. Berchelmann repeatedly informed me that he was in contact with Ms. Saldivar and the Saldivar family concerning this issue. About this time I received a letter from Ms. Saldivar in September 2002, wherein it was obvious that she had some communication with Mr. Berchelmann because she was aware of the mandamus issue. I responded to her letter, in early October, explaining the situation as I understood it to be. (See attached Exhibit 4 and 5)

Ms. Saldivar responded on October 16, 2002 explaining that she wanted to have me work on the mandamus solely through her, and not go through Mr. Berchelmann's office, as he was so sick. (See Attached Exhibit 6.) I received another letter November 11, 2002, wherein Ms. Saldivar discussed the payment of the fee for the additional work required. (See Exhibit 7) Again, Ms. Saldivar made it clear that she wanted to work with me and not to go through Mr. Berchelmann. I thought I had made it clear in the my October letter that I would discuss the situation with Mr. Berchelmann, which I had done. I also discussed the situation with Lisa Ybarra, Mr. Berchelmann's secretary, and members of the Saldivar family, explaining that I would not be willing to undercut Mr. Berchelmann, but I would be happy to continue any needed further representation through Mr. Berchelmann's office. Additionally, Mr. Berchelmann desired that the circumstance of our working relationship remain the same. I informed the Saldivar family that I would be happy to do the additional work, however, the remuneration needed to be made to Mr. Berchelmann's office. I discussed this with Lisa Ybarra, letting her know, as Mr. Berchelmann was in and out of the office as his health declined, that she should collect the money from the Saldivar family and then Mr. Berchelmann could pay me pursuant to our agreement. I discussed this, during this time, frequently with the Saldivar family. Lisa Ybarra informed me during this

time that she was in communication with the Saldivar family concerning this issue, but they had failed to bring in the requested fee or any payments. As I did not work for Mr. Berchelmann, relying upon the information I was receiving, I felt the situation was in hand, especially since Mr. Berchelmann told me, on a frequent basis, that he had the situation under control, but that, as the Saldivar family had not come in with any money, there was nothing he could do.

Mr. Berchlelmann's health took a decided turn for the worst around the first of this year. It was my understanding, based upon what Terry McDonald told me, that sometime around the time of Mr. Berchelmann's death, Alan Manka had been hired by the family and Mr. McDonald had turned over the entire file, along with a release of services, to Mr. Manka. The only thing that had ever been in my possession subsequent to my completion of the Post Conviction State Writ were the certified mailing cards. Two copies of these were contained within the file that Mr. Manka obtained, sometime in March, I believe. The Saldivar family continued to call me wishing to continue with my representation. I informed them that as I was no longer going to represent Ms. Saldivar on any further matters as Mr. Manka had been retained, and I had completed all the work I was hired by Mr. Berchelmann to do. Around this time, T.R. Whited, an attorney working for Mr. Manka, requested that I fax the green cards again, as the copies he had were illegible. I faxed the green cards. I informed T.R. Whited that there were problems with the case that they needed to be aware of, attempting to explain the statutory time problems pursuant to the Federal Writ. I also informed Mr. Whited that I was surprised that Ms. Saldivar would hire different counsel, as she was always so insistent on staying with me, and now that Mr. Berchelmann was deceased, it would be logical for me to step up as lead counsel. However, that was not the situation. I also informed Mr. Whited that it would probably be beneficial for Mr. Manka to stay on the case due to the fact that there was so little time within which to file the Federal Writ, again should the family so choose to proceed. I felt that Mr. Manka might be able to obtain an equitable tolling of the statutory time to file the federal writ, coming onto the case, late in the game, due to the fact that the prior attorney had died. I never informed Mr. Whited that I would not cooperate and would not give them any documents. Quite the opposite. I gave them copies of the only documents I had in my possession, i.e. the green cards. I did inform Mr. Whited that if they needed my help, in terms of working on the Writ of Mandamus, I would do so, but would need to be compensated.

In May of this year I received a letter from Ms. Saldivar that took me quite by surprise. It was clear that she was being given misinformation. (See Exhibit 8) I immediately wrote a letter explaining the situation, wherein I explained I had nothing in my possession except the green cards, that I had faxed the copies of the green cards to Alan Manka, that there were copies of these same green cards contained within the file that was turned over to Mr. Manka. I also explained that I never stated that I was not her attorney, quite the opposite, but that there was nothing I could do, as she had obtained new counsel. Ms. Saldivar wrote a response letter, much of which contains misinformation, however continuing to request my representation. (See Exhibit 9)

I responded to all of Ms. Saldivar's letter. Additionally, I returned her family's phone calls. I was not aware that there was the problem with communication between herself and Mr. Berchelmann's office as I was continually informed by Mr. Berchelmann, and later by Ms. Ybarra, and John Fox, an attorney working for Mr. Berchelmann, that they were in contact with Ms. Saldivar and the Saldivar family on a frequent basis. About this same time, the Saldivar family started calling me again. I informed them that I only possessed the certified mailing cards and Mr.

Manka had these. About this time, T.R. Whited, informed me that the copies of the green cards that were provided when they received the file from Mr. McDonald, as well as my faxed copies, were illegible. Therefore, I made photocopies of the cards, and physically handed them to Mr. Manka and Mr. Whited.

      I was quite surprised when I received this grievance, as the Saldivar family and Ms. Saldivar have continually sought to continue my legal representation. Receiving daily phone calls from Maria Saldivar, even after the filing of the grievance, I reluctantly returned the phone calls and informed her that I believed she, as well as Yolanda, were in possession of incorrect information. Maria Saldivar acknowledged that she had been informed that Mr. Berchelmann and myself had never filed the writ. I informed her this was incorrect. Ms. Yolanda Saldivar knew this was incorrect as she had been provided a copy of the writ, and copies of the green cards. Maria Saldivar requested that I inquire of Mr. Manka's office of the possibility of working on the Writ of Mandamus through his office, and I informed her that I would inquire. I placed a call to the office and never received a return phone call, although, it has been previously made known to me, through Mr. Whited, that Mr. Manka might be receptive to this offer. Upon returning Maria Saldivar's most recent phone calls, received subsequent to the filing of the grievance, requesting my legal representation, I have received no further phone calls.

Respectfully Submitted,

Suzanne Kramer    7/28/03

July 10, 2009

United States District Court
for the Southern District of Texas
c/o Mr. Michael N. Milby, Clerk
P.O.Box 61010
Houston, Texas 77208-1010

Re:  Yolanda Saldivar v. Nathaniel Quarterman
     Cause Number: 4:08-cv-01026

Dear Mr. Milby:

     Enclosed you will find a Motion for Leave of Court to File
Writ of Error to Reverse This Court's Final Judgment Order of
February 2, 2009.  I understand my case is now presently in
the Fifth Circuit under consideration for a Certificate of
Appealability.  Thus, if my filing to this Court is inappropriate
or improperly, I request that I be informed so that I can forward
it to the Fifth Circuit.  I have forward a copy of this Motion
to them to be made part of my record.  Otherwise, please present
this Motion to the Court.

     Thank you.


Respectfully Submitted,

Yolanda Saldivar

Yolanda Saldivar, #733126
Pro Se
Mountain View Unit
2305 Ransom Rd.
Gatesville, Texas 76528

cc:  Fifth Circuit Court of Appeals
     Ms. Carole S. Callaghan
     Mr. Michael Bozarth

YOLANDA SALDWARE 73126
Mountain View Unit
2305 Ransom Rd.
Gatesville, Tx. 76528

7008 0150 0002 4310 4307

PRIORITY
MAIL
www.usps.gov
UNITED STATES POSTAL SERVICE Inc.
LABEL 107R, OCT 1997

United States District Court
Southern District of Texas
FILED
JUL 13 2009
Clerk of Court

U.S. POSTAGE
$0.00
0005964141-08
77208
1006

United States District Court
For The Southern District Court
Houston Division
P.O. Box 61010
Houston, Texas 77208-1010




























